**FARMERS INSURANCE EXCHANGE, a Reciprocal or Interinsurance Exchange, Plaintiff and Appellant,**

**v.**

**Ilene N. CALL, Defendant and Respondent.**

**No. 18677.**

Supreme Court of Utah.

Dec. 10, 1985.

Frank Roybal, Bountiful, for plaintiff and appellant.

Lyle W. Hillyard, Logan, for defendant and respondent.

DURHAM, Justice:

Farmers Insurance Exchange ("Farmers"), the plaintiff in the declaratory judgment action below, seeks reversal of a summary judgment. The trial court ruled that a household exclusion clause in an automobile liability insurance policy is void as to the minimum coverage requirements of the Utah Automobile No-Fault Insurance Act (as it incorporates qualifications of insurance policies under the Utah Safety Responsibility Act), but is enforceable as to coverage in excess of those amounts. Therefore, Farmers is required to pay, defend, or indemnify the insured under the policy. The defendant Ilene N. Call ("Mrs. Call") cross-appeals from the judgment, seeking a reversal of the lower court's order insofar as it ruled the household exclusion clause to be valid beyond the minimum coverage and denied her attorney fees and costs. We affirm the appeal and reverse in part the cross-appeal.

In July 1980, John Adam Call, a minor child, was injured as he walked by an automobile driven by his mother, Mrs. Call. Thereafter, an action was filed on his behalf by his father, as guardian ad litem, naming Mrs. Call as the defendant, seeking

damages of $120,000 for medical services, medication, and hospitalization, and seeking general damages in the sum of $1,500,-000. Farmers had issued a standard automobile liability insurance policy covering Mrs. Call as an insured. The policy contains the following exclusion:

This policy does not apply under Part I: ...;

(12) to the liability of any insured for bodily injury to (a) any member of the same household of such insured except a servant....

Farmers states that this household exclusion clause relieves it of any obligation to pay, defend, or indemnify Mrs. Call from any claims arising out of the accident involving her son. Farmers argues that the household exclusion clause serves to protect insurers from collusion that might arise in intrafamily suits.

Mrs. Call specifically alleged in her answer that neither she nor her husband, who purchased the policy, ever received a copy of the policy. Further, she alleged that neither she nor her husband was aware of the exclusion clause and that the insured's agent never discussed or mentioned the exclusion clause. The application for insurance signed by Mr. Call did not mention or refer to any exclusions from coverage.

Three issues are presented on appeal: first, whether a household exclusion clause in an automobile insurance policy is valid as to the required statutory minimum coverages; second, whether a household exclusion policy is valid as to insurance in excess of the statutory minimum; and third, whether Mrs. Call should be awarded attorney fees.

## I.

The trial court determined that the household exclusion is void as to required statutory minimum coverages, relying on *Allstate Insurance Co. v. United States Fidelity & Guaranty Co.*, Utah, 619 P.2d 329 (1980). In *Allstate*, we held that the Utah Automobile No-Fault Insurance Act, U.C.A., 1953, §§ 31–41–1 to –13, incorporates section 41-12-21 of the Utah Safety Responsibility Act, thereby mandating minimum liability coverages for all insurance policies used as security for the registration and operation of motor vehicles in Utah. *Allstate*, 619 P.2d at 332–33. *See also Dairyland Insurance Corp. v. Smith*, Utah, 646 P.2d 737, 739 (1982).

Farmers argues that the public policy reasons supporting the household exclusion provision are different from those upon which the named driver exclusion in *Allstate* depended, and therefore *Allstate* is not dispositive. Farmers by this argument suggests that protecting an insurer from possible household collusion outweighs the legislative mandate to provide mandatory protection for victims of automobile accidents. We do not agree.

An insurer has the right to contract with an insured as to the risks it will or will not assume, as long as neither statutory law nor public policy is violated. Thus an insurer may include in a policy any number or kind of exceptions and limitations to which an insured will agree unless contrary to statute or public policy. 2 G. Couch, *Couch on Insurance 2d* § 15:48 (rev. ed. 1984). *See also Marriot v. Pacific National Life Assurance Co.*, 24 Utah 2d 182, 185–86, 467 P.2d 981, 982–83 (1970). Prior to the enactment of the no-fault insurance laws, the general rule upheld the validity and application of household exclusionary clauses. Annot., *Validity, Construction, and Application of Provision of Automobile Policy Excluding from Coverage Injury or Death of Member of Family or Household of Insured*, 46 A.L.R.3d 1024, 1029 (1972). Utah followed that rule. *See, e.g., State Farm Mutual Auto Insurance Co. v. Kay*, 26 Utah 2d 195, 487 P.2d 852 (1972); *Kay v. Kay*, 30 Utah 2d 94, 513 P.2d 1372 (1973). However, the enactment of the Utah Automobile No-Fault Insurance Act, U.C.A., 1953, §§ 31–41–1 to –13, and the requirement of mandatory security necessitate a fresh look at the public policy questions having to do with the household exclusion clause.

The starting point for this analysis must be the Utah Automobile No-Fault Insurance Act. Section 31–41–4(1) of the Act requires every resident owner of a motor vehicle to maintain security on the vehicle throughout the registration period. This section substantially changed the public policy of this state by mandating that all Utah automobiles be covered by certain types of security. According to section 31–41–5, each automobile insurance policy used as security must qualify under the Safety Responsibility Act, U.C.A., 1953, §§ 41–12–1 to –41. "Thus by reference to the Safety Responsibility Act the legislature has established a mandatory minimum liability coverage requirement for insurance policies presented as security under 31–41–5." *Allstate*, 619 P.2d at 333. At the time of loss in 1980, section 41–12–5(e) of the Safety Responsibility Act required minimum liability insurance of $15,000 for the bodily injury of one person.

The No-Fault Act authorizes specific allowable exclusions from coverage. Under the Act, an insurer may exclude benefits to any injured person only "if such person's conduct contributed to his injury under any of the following circumstances: (i) Causing injury to himself intentionally; or (ii) While committing a felony." § 31–41–10(b). There is no household exclusion permitted. The statute therefore directs that no automobile insurance policy may exclude household members to the extent of minimum liability coverage. This legislative action reflects a public policy requiring minimum coverage to protect innocent victims of automobile accidents.

The household exclusion clause has been invalidated by a majority of the decisions in other jurisdictions which have addressed the validity of the exclusion clause after the enactment of mandatory automobile liability insurance. *Meyer v. State Farm Mutual Automobile Insurance Co.*, Colo., 689 P.2d 585, 590 (1984); *Jennings v. Government Employees Insurance Co.*, 302 Md. 352, 488 A.2d 166, 170 (1985) (*citing Dewitt v. Young*, 229 Kan. 474, 625 P.2d 478 (1981); *Bishop v. Allstate Insurance Co.*, Ky., 623 S.W.2d 865 (1981); *State Farm Mutual Insurance Co. v. Sivey*, 404 Mich. 51, 272 N.W.2d 555 (1978); *Transamerica Insurance Co. v. Royle*, Mont., 656 P.2d 820 (1983); *Estate of Neal v. Farmers Insurance Exchange*, 93 Nev. 348, 566 P.2d 81 (1977); *Kish v. Motor Club of America Insurance Co.*, 108 N.J.Super. 405, 261 A.2d 662 (1970), *cert. denied*, 55 N.J. 595, 264 A.2d 68 (1970); *Hughes v. State Farm Mutual Auto Insurance Co.*, N.D., 236 N.W.2d 870 (1975); *Jordon v. Aetna Casualty and Surety Co.*, 264 S.C. 294, 214 S.E.2d 818 (1975); *Allstate Insurance Co. v. Wyoming Insurance Department*, Wyo., 672 P.2d 810 (1983)). *See also State Farm Mutual Auto Insurance Co. v. Traycik*, 86 Mich.App. 285, 272 N.W.2d 629 (1979); *Dowdy v. Allstate Insurance Co.*, 68 Or.App. 709, 685 P.2d 444 (1984), *rev. denied*, 298 Or. 172, 691 P.2d 481 (1984). *But see Farmers Insurance Exchange v. Cocking*, 29 Cal.3d 383, 173 Cal.Rptr. 846, 628 P.2d 1 (1981). Those jurisdictions which invalidate the exclusion interpret their mandatory insurance statutes to require liability insurance subject only to specific statutory exclusions and construe the legislative policy to require minimum coverage to victims of automobile accidents. For example, the Supreme Court of the State of Kentucky invalidated a household exclusion clause and traced a statutory history similar to the history in Utah, stating:

By enacting the MVRA [Motor Vehicles Reparations Act] the legislature established for the first time a system of compulsory insurance for the owners and operators of motor vehicles in Kentucky....

... [The statutory scheme] specifies the minimum amounts of coverage that a motor vehicle owner or operator must carry to fulfill these requirements....

... [W]hen the legislature stated the policy behind the MVRA and set forth its requirements it specified no exclusions from minimum coverage.

....

An exclusionary clause in an insurance contract which reduces below minimum or eliminates either of these coverages

[basic reparations benefits and minimum liability coverage] effectively renders a driver uninsured to the extent of the reduction or elimination. Because the stated purpose of the MVRA is to assure that a driver be insured to a minimum level, such an exclusion contravenes the purpose and policy of the compulsory insurance act.

*Bishop v. Allstate Insurance Co.*, Ky., 623 S.W.2d 865, 865–66 (1981) (citations omitted).

The Washington Supreme Court reached a similar result based upon a public policy analysis when it stated:

This clause prevents a specific class of innocent victims, those persons related to and living with the negligent driver, from receiving financial protection under an insurance policy containing such a clause. In essence, this clause excludes from protection an entire class of innocent victims for no good reason.

The exclusion becomes particularly disturbing when viewed in light of the fact that this class of victims is the one most frequently exposed to the potential negligence of the named insured. Typical family relations require family members to ride together on the way to work, church, school, social functions, or family outings. Consequently, there is no practical method by which the class of persons excluded from protection by this provision may conform their activities so as to avoid exposure to the risk of riding with someone who, as to them, is uninsured.

*Mutual of Enumclaw Insurance Co. v. Wiscomb*, 97 Wash.2d 203, 208, 643 P.2d 441, 444 (1982). It would be anomalous if the rights of innocent accident victims, for whose protection the Utah No-Fault Act

was adopted, could be defeated by private agreements.

The plaintiff Farmers cites *State Farm Mutual Auto Insurance Co. v. Kay*, 26 Utah 2d 195, 487 P.2d 852 (1972), and *Kay v. Kay*, 30 Utah 2d 94, 513 P.2d 1372 (1973), in support of the position that this Court has upheld a household exclusion clause substantially identical to the present exclusion on public policy grounds. These cases are inapposite, however, since they were decided prior to the enactment of the no-fault automobile insurance laws and the requirement of mandatory automobile security.

Furthermore, we are not persuaded that the collusion rationale that the Court relied upon in the *Kay* opinions remains an adequate justification for the household exclusion clause. In *Malan v. Lewis*, Utah, 693 P.2d 661, 674 (1984), this Court determined that the Utah Guest Statute is unconstitutional and found the collusion rationale to be insufficient to deny coverage to innocent guest passengers injured in automobile accidents. In addition, the risk of collusion in intrafamily litigation has never been accepted by this Court as grounds for endorsing the parent-child immunity doctrine, which has likewise never been established by the legislature.[1]

While we acknowledge the possibility of intrafamily collusion, we agree with the Kansas Supreme Court, which said:

[T]he possibility of collusion exists to a certain extent in any case. Everyday [sic] we depend on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that the courts are quite adequate for this task. In litigation between parent and child, judges and juries would naturally be mindful of

---

**1.** In *Bishop v. Nielsen*, Utah, 632 P.2d 864 (1981), this Court acknowledged that the parent-child immunity doctrine did not exist in Utah. *Id.* at 865. The Court did not rely on the nonexistence of the doctrine, however, for its holding in that case that a minor daughter of a plaintiff is a "joint tortfeasor" under the contribution statute, U.C.A., 1953, § 78–27–39, and thus liable

to her father for property damage resulting from a collision of an automobile operated by a third party and the daughter. In dicta, the opinion stated that even if the parent-child immunity doctrine had been adopted in this jurisdiction, the equities in favor of contribution far outweigh the benefits of strict application of the doctrine. *Bishop*, 632 P.2d at 868.

the relationship and would be even more on the alert for improper conduct.

*Nocktonick v. Nocktonick,* 227 Kan. 758, 768–69, 611 P.2d 135, 142 (1980). In *Nocktonick,* the court lists nineteen states that have rejected parental immunity in automobile accident cases. *Nocktonick, id.* at 767, 611 P.2d at 141. Those states reject the collusion rationale offered in support of the household exclusion.

In addition, other safeguards exist to protect insurers against unscrupulous collusive households. Insurers conduct thorough investigations, require prompt notice of accidents, and function as specialists in their fields. They are not likely to be easy victims of fraudulent lawsuits. The insured is always represented by the insurance company, who will carefully represent the insurer's interest as well as the interest of the insured. Furthermore, most policies require cooperation from the insured and provide penalties for false statements. By law, it is a criminal offense to present any false or fraudulent claim upon any contract of insurance. U.C.A., 1953, § 76–6–521.

We therefore hold that a household or family exclusion clause in an automobile insurance policy is contrary to the public policy of this state and the statutory requirements found in the No-Fault Insurance Act as to the minimum benefits provided by statute. We overrule our prior opinions in *State Farm Mutual Auto Insurance Co. v. Kay,* 26 Utah 2d 195, 487 P.2d 852, and *Kay v. Kay,* 30 Utah 2d 94, 513 P.2d 1372, to the extent that they are inconsistent with this opinion.

## II.

The next issue is whether a household exclusion clause in an automobile policy is valid as to the policy limits in excess of the statutory minimums. The defendant offers two alternative theories. First, she claims that the exclusion clause is void as against public policy. Secondly, she argues that in the event the household exclusion clause is found to be void as to minimum coverages, it should be voided entirely since neither she nor her husband ever had notice of the existence or import of the household exclusion. We agree with the defendant's second theory and decline to address at this time the validity of the household exclusion clause in excess of the statutory minimums.[2]

In *General Motors Acceptance Corp. v. Martinez,* Utah, 668 P.2d 498 (1983), this Court held that an insurance company which neglects to deliver or otherwise disclose, in writing, any document stating an exclusion in a credit life or disability insurance policy will be estopped from relying on the exclusion. Although *Martinez* involved a statute requiring delivery of a credit life and disability policy to the insured, the public policy expressed is equally applicable to automobile insurance policies. Like credit life and disability insurance, automobile insurance is generally sold through adhesion contracts that are not negotiated at arm's length. Purchasers commonly rely on the assumption that they are fully covered by the insurance that they buy. Because of this, public policy requires that persons purchasing such policies are entitled to be informed, in writing, of the essential terms of insurance contracts, especially exclusionary terms. *Martinez,* 668 P.2d at 501.

We therefore hold that where the insurer fails to disclose material exclusions in an automobile insurance policy and the purchaser is not informed of them in writing,

---

**2.** We note that other jurisdictions have split on this issue. *See Meyer v. State Farm Mut. Auto. Ins. Co.,* Colo., 689 P.2d 585, 592 (1984) (holding limits of carrier's policy apply where state statute declared purpose of mandatory insurance laws is to "avoid inadequate compensation to victims"); *Mutual of Enumclaw v. Wiscomb,* 97 Wash.2d 203, 643 P.2d 441 (1982) (permitting recovery to full limits of carrier's policy despite exclusion clause where there was no freedom to contract); *Arcenaux v. State Farm Mut. Auto. Ins. Co.,* 113 Ariz. 216, 550 P.2d 87 (1976) (coverage in excess of that mandated by statute not subject to the provisions of the statute); *Dewitt v. Young,* 229 Kan. 474, 625 P.2d 478 (1981) (limiting carrier's liability to minimum coverage required by statute); *Estate of Neal v. Farmers Ins. Exch.,* 93 Nev. 348, 566 P.2d 81 (1977) (exclusion invalid only to the extent that it violates statutory requirements).

those exclusions are invalid. Without disclosure, the household exclusion clause fails to "honor the reasonable expectations" of the purchaser, rendering the exclusion clause invalid as to the entire policy limits. *Transamerica Insurance Co. v. Royle*, Mont., 656 P.2d 820, 824 (1983); *accord Mutual of Enumclaw v. Wiscomb*, 97 Wash.2d 203, 643 P.2d 441 (1982).

On motion for summary judgment we will review any doubt or uncertainty concerning issues of fact in the light most favorable to the party opposing summary judgment. *Mountain States Telephone & Telegraph Co. v. Atkin, Wright & Miles, Chartered*, Utah, 681 P.2d 1258, 1261 (1984). The record in this case does not reflect the existence of a material factual dispute regarding disclosure of the exclusion. Although Farmers admits that it issued a policy to the Calls, it was unable to produce any evidence that the exclusionary terms were ever disclosed, that the policy was delivered, or that Mr. and Mrs. Call were otherwise informed of the household exclusion.[3] Mrs. Call asserts that the household exclusion was never mentioned or discussed by Farmers' agent. In her answer, Mrs. Call affirmatively alleges that the Farmers agent never indicated Farmers' standard insurance contract contained a household exclusion clause and that neither she nor her husband ever received a copy of the contract. This was never controverted by Farmers. During discovery, Farmers released a copy of its file to the defendant. This file contained the application for insurance signed on December 12, 1978, and several renewal notices. Neither the application nor the renewal notices contain or make reference to the household exclusion. Noticeably absent from the file and not to be found anywhere in the record is a policy signed by or identified to the Calls. In answer to an interrogatory as to whether it had given any insured (including Mr. and Mrs. Call) notice of the household exclusion at the time of application or renewal, Farmers stated that such information was "unavailable." Since Farmers failed to provide any evidence that it delivered or otherwise disclosed the household exclusion clause to the Calls, they were not informed of essential terms to the insurance contract, and that clause is therefore invalid as to the entire policy amounts.

### III.

In her cross-appeal, Mrs. Call argues that the trial court should be reversed in its refusal to award her attorney fees and costs. She relies on *American States Insurance Co. v. Walker*, 26 Utah 2d 161, 486 P.2d 1042 (1971), where this Court upheld such an award of attorney fees in a declaratory judgment action by an insurer against its insured to determine liability under an automobile insurance policy. The Court stated, however, that "[b]efore an award of attorney's fees [can] be made in the declaratory judgment action, it must appear that the insurance company acted in bad faith or fraudulently or was stubbornly litigious." *Id.* at 164–65, 486 P.2d at 1044 (footnote omitted). The defendant has not demonstrated that this litigation was not brought in good faith.

When faced with a decision as to whether to defend or refuse to defend, an insurer is entitled to seek a declaratory judgment as to its obligations and rights. *See State Farm Mutual Auto Insurance Co. v. Kay*, 26 Utah 2d 195, 199, 487 P.2d 852, 855 (1971). An award of attorney fees is not warranted "where the plaintiff merely stated its position and initiated this action for determination of what appears to be a justi-

---

**3.** We note that the fact that the defendant Mrs. Call was only a named insured and not a purchaser on the automobile insurance policy purchased by her husband is irrelevant to the outcome of this case. That is so because the policy was purchased by her husband for the household unit, and the benefits he contemplated extended to Mrs. Call as well as to himself. We do not by this opinion treat or rule on the question of whether an insurance company has an obligation to disclose policy provisions to all named insureds. We stay, rather, within the rule applied (albeit by statute) in *Martinez* requiring delivery or disclosure to a purchaser. In this case the interests of the purchaser and the insured coincide, and the failure to disclose to the former precludes the exclusion of coverage for the latter.

ciable controversy." *Western Casualty & Surety Co. v. Marchant*, Utah, 615 P.2d 423, 427 (1980). We agree with the trial court that there is no foundation for the award of attorney fees and costs to the defendant and affirm that portion of the judgment. Costs on appeal are awarded to the defendant Call.

STEWART, J., and DEAN E. CONDER, District Judge, concur.

HOWE, Justice (concurring and dissenting):

I concur in parts I and III of the Court's opinion. I cannot join part II because it is founded on an assumption of fact which we cannot make, and it directs recovery by the plaintiff on a theory which she did not raise in her motion for summary judgment. Consequently, it was not presented to nor ruled upon by the trial court in granting summary judgment and was not even mentioned as a point on the cross-appeal filed by the defendant in this Court.

In its complaint, the plaintiff alleged that it issued policy No. 76 10203 62 07 to defendant's husband. In her answer to the complaint, the defendant alleged that neither she nor her husband received a copy of the policy and therefore had no knowledge of any of its terms and exclusions. It appears that the policy was originally written over eighteen months before the accident and had been renewed semiannually by Mr. Call. Since our rules of procedure do not permit a plaintiff to file a responsive pleading to an answer of a defendant, Farmers had no occasion to controvert the defendant's denial that he received a copy. Later, in interrogatories propounded by the defendant to the plaintiff, the defendant

asked whether the plaintiff had ever *issued* an automobile insurance policy for her husband. Farmers answered affirmatively. Defendant did not inquire whether the policy had ever been mailed or delivered, nor whether Farmers had informed Mr. Call in writing of the policy exclusions.[1] In view of this state of the record, I am unable to make the leap that the majority makes and assume that the plaintiff did not at any time mail or otherwise deliver to its insured a copy of the policy. This is highly important since under the majority's view of the law the policy msut be "delivered," or the purchaser must otherwise be informed in writing of the exclusion. "Delivery" would take place upon mailing by the plaintiff. Whether the insured actually received it would be inconsequential if it was in fact mailed. Since "mailing" and "delivery" were not inquired into, summary judgment based on lack of "delivery" is not appropriate at this juncture.[2]

In the trial court, both parties moved for summary judgment. The plaintiff's theory was that the household exclusion was valid and enforceable, relying upon *State Farm Mutual Auto Insurance Co. v. Kay*, 26 Utah 2d 195, 487 P.2d 852 (1971), and *Kay v. Kay*, 30 Utah 2d 94, 513 P.2d 1372 (1973). The defendant also moved for summary judgment on the theory that due to developments in the law since those cases were decided by this Court, we should hold that the household exclusion is unenforceable as being violative of public policy. Thus, the trial court was presented with a pure question of law, and it ruled that the household exclusion clause was invalid as to the first $15,000 of insurance, but was valid as to amounts in excess thereof. It is

---

1. The interrogatory referred to in the majority opinion which Farmers answered "information unavailable," only inquired whether any insured was *specifically* given *express* notice of the household exclusion, "either at the time of application or at the time of renewal." It did not inquire whether Farmers had at other times furnished Mr. or Mrs. Call written information about the policy (including the exclusions) but which did not "specifically" or "expressly" point out the household exclusion.

2. The file kept by Farmers on Mr. Call reflects that on 1–19–81 and again on 1–27–81, the agent by written memo to "Policy Service" requested that Call's policy be "re-issued" because the insured had "misplaced" his. This memo is subject to the interpretation that Mr. Call did indeed once have a copy of his policy, but misplaced it and requested another from the agent. This whole subject was not explored on summary judgment and points up why a remand is necessary—as defendant herself contends.

important to note that in her memorandum in opposition to plaintiff's motion for summary judgment, the defendant contended that even if she were ruled against on the question of law presented to the trial court, she had another theory entitling her to recover which could not be disposed of on the motion for summary judgment. This theory was that she and her husband had relied upon the plaintiff's agents over the years to provide them with adequate insurance coverage and that they had failed to specifically point out or warn them about the household exclusion clause. But she argued that recovery on this theory depended upon facts which still had to be developed. She stated in her memorandum:

> Defendant maintains that the issues of facts still to be resolved even if the household family exclusion clause is valid are, first, whether defendant relied on plaintiff's agents to provide adequate insurance coverage; second, whether such reliance was reasonable; and, third, whether plaintiff breached a duty to provide adequate insurance coverage. Findings as [sic] these issues against plaintiff may estop plaintiff from relying on this exclusion. Hence, plaintiff's motion for summary judgment cannot be granted unless the court holds against defendant on each of these issues as a matter of law *based on the scant file record before it,* which action would be clearly in error.

(Emphasis added.) Thus, it is clear that the defendant did not contend in the trial court that lack of delivery of the policy alone would, as a matter of law, make the household exclusion clause unenforceable, as the majority now holds.

Even in this Court, in this appeal, the defendant makes no such contention. In her brief filed in this Court, the defendant states:

> [T]he trial court did not rule on whether the household or family exclusion clause applies specifically to [defendant] in this case. The trial court reserved the issue of specific applicability of the clause to [defendant] pending an appeal of issues now before this court and in light of

disputed facts relating to allegations by [defendant] that [plaintiff] and its agents breached their duty by failing to fully inform [defendant] of the lack of coverage in her insurance coverage.

The majority ignores the forthright contention made by the defendant in the trial court and which she now makes in this Court that she is not entitled to summary judgment on her second theory of recovery because it depends upon facts which are disputed and which were not inquired into on this motion for summary judgment. Instead, the majority now relieves the defendant of all proof which she so earnestly maintains she must produce and announces without any factual basis therefor that the policy was never delivered, its terms not disclosed, and thus the defendant is automatically entitled to recover.

Time and time again this Court has held that it will not consider points and contentions not raised in the trial court. We have repeatedly pointed out that we are a court of appeal and must afford the trial court the first opportunity to rule upon issues and theories advanced by the litigants. Yet in this case we are *sua sponte* doing the very thing that we forbid litigants to do. Whether a policy of insurance was ever mailed or delivered by the plaintiff to Mr. Call has never been claimed by the defendant to be determinative of her right to recover. If it is now going to be determinative in this action, an adequate record on that question should be made. As the defendant correctly points out, factual matters remain to be resolved before summary judgment would be proper on her theory that she and her husband relied upon Farmers to furnish her adequate insurance coverage, including disclosure of the household exclusion. I would remand the case to the trial court for a trial on the defendant's theory and would not at this point reach out and decide the case on a theory not advanced in the trial court nor presented to us on defendant's cross-appeal.

I dissent from the gratuitous extension by the majority of U.C.A., 1593, § 31–34–

6(1) to automobile liability policies. The legislature clearly limited its application to credit life and disability insurance. *General Motors Acceptance Corp. v. Martinez,* Utah, 668 P.2d 498 (1983). Extending the statute beyond its clear terms under the guise of promoting public policy is judicial legislating.

HALL, C.J., concurs in the concurring and dissenting opinion of HOWE, J.

ZIMMERMAN, J., does not participate herein.

