**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 14 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WEST AMERICAN INSURANCE
COMPANY,

      Plaintiff-Appellee-
      Cross-Appellant,

v.

AV&S, AM&S, LSK, AS&S and
AMBASSADOR PIZZA, INC.,

      Defendants-Appellees-
      Cross-Appellants,

and

BARRY HARPER, as conservator for
James Harper,

      Intervenor-Appellant-
      Cross-Appellee.

Nos. 96-4094, 96-4096, 96-4097,
96-4138, 96-4151

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:95CV254S)**

---

Donald J. Purser and Rebecca L. Hill, Donald Joseph Purser & Associates, P.C.,
Salt Lake City, Utah, for Plaintiff-Appellee-Cross-Appellant, West American
Insurance Company.

Andrew H. Stone and Scott D. Cheney, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, for Defendants-Appellees-Cross-Appellants, Ambassador Pizza, Inc., AV&S, AM&S and LSK.

Joseph J. Joyce and Kristen A. VanOrman, Strong & Hanni, Salt Lake City, Utah, for Defendant-Appellee-Cross-Appellant AS&S, Inc.

Jeffrey D. Eisenberg, Alan W. Mortensen and Paul M. Simmons, Wilcox, Dewsnup & King, Salt Lake City, Utah, for Intervenor-Appellant-Cross-Appellee Barry Harper.

---

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **HENRY**, Circuit Judge.

---

**EBEL**, Circuit Judge.

---

West American Insurance Company appeals the district court's declaratory judgment that it had a duty to defend its insureds under an insurance contract. The insureds cross-appeal the district court's denial of a motion for attorney fees incurred by the insureds in litigating the declaratory judgment action. We affirm.

## BACKGROUND

On November 11, 1993, high school student Bryce K. Morris ("Morris") hit James P. Harper ("Harper"), a pedestrian in a crosswalk, with his car while delivering a pizza for his employer, AS&S, Inc. ("AS&S"), in Riverton, Utah. AS&S is a corporation whose business is a franchisee of Ambassador Pizza, Inc. ("Ambassador"). Ambassador had several other franchisees, including AV&S, Inc., AM&S, Inc., and LSK, Inc. (collectively, the "Other Franchisees").

As a result of the accident, Harper suffered severe injuries to his brain, head, neck, legs, and back. Harper's brother Barry Harper, acting as Harper's conservator, filed suit against Ambassador, AS&S, the Other Franchisees, and Morris for negligence, negligent entrustment, and negligent hiring and training (the "Harper litigation"). Ambassador, AS&S, and the Other Franchisees tendered defense of the Harper litigation to their insurer, West American Insurance Company ("West American"), under Ambassador's Business Owner's Liability Insurance Policy ("the Policy"). The Policy covered Ambassador and all of its franchisees, including AS&S. West American refused to defend Ambassador or any of its franchisees because the Policy contained an "Auto Exclusion" clause, which excluded from coverage under the Policy any claims for "'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to <u>any insured</u>." (emphasis added). An "insured" under the Policy included each named company and that company's employees for acts within the scope of their employment. However, the Policy also contained a "Separation of Insureds" clause that provided: "Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies: a. As if each Named Insured were the

only Named Insured; and b. Separately to each insured against whom claim is made or 'suit' is brought."

West American filed a complaint in the United States District Court for the District of Utah under 28 U.S.C. § 1332 (diversity jurisdiction) seeking a declaratory judgment that it did not have a duty to defend Ambassador, AS&S, the Other Franchisees, or Morris. Resolving the parties' motions for summary judgment, the district court found that AS&S and Morris were not covered under the Policy due to the Auto Exclusion clause. However, the district court concluded that the Policy only excluded Morris and AS&S as Morris' employer and did not exclude Ambassador, AV&S, AM&S, or LSK from insurance coverage. As a result, the district court ruled that West American had a duty to defend Ambassador and the Other Franchisees in the underlying Harper litigation and had to indemnify Ambassador and the Other Franchisees against any judgment entered against them. The district court also held West American liable for attorney fees incurred by Ambassador, AV&S, AM&S, and LSK in defending the Harper litigation. However, the district court denied Ambassador's and the Other Franchisees' motions for attorney fees incurred defending against West American's declaratory judgment action. These appeals followed. In case 96-4097, West American appeals the determination that it had a duty to defend Ambassador and the Other Franchisees. In case 96-4138, Ambassador and the

- 4 -

Other Franchisees appeal the denial of attorney fees.[1]  We have jurisdiction under

28 U.S.C. § 1291.[2]

## DISCUSSION

Because this is a diversity case, we apply the forum state's choice of law

rules.  See Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532

(10th Cir. 1996).  Here the parties agree that Utah courts would apply Utah

substantive law to this dispute, and we agree.  See American Nat'l Fire Ins. Co. v.

Farmers Ins. Exchange, 927 P.2d 186, 188 (Utah 1996).

### I.  Coverage Under the Policy

We review a grant of summary judgment de novo, taking the evidence in

the light most favorable to the non-moving party.  See Kaul v. Stephan, 83 F.3d

1208, 1212 (10th Cir. 1996).  "Whether an exclusion in an insurance policy is

clear and unambiguous is a question of law that may be resolved by the court in

---

[1]  Barry Harper and AS&S also filed appeals numbered 96-4094, 96-4096, and 96-4151.  However, pursuant to a stipulation entered into by the parties, we now dismiss those appeals as moot.

[2]  At the time the parties filed their notices of appeal, it was unclear whether the district court's April 2, 1996, Order and April 8, 1996, Judgment constituted a final judgment disposing of all claims that could be appealed under 28 U.S.C. § 1291.  This court directed the parties to secure from the district court either a certification under Federal Rule of Civil Procedure 54(b) or an order adjudicating all remaining claims.  The district court then issued a series of further orders on August 8 and 9, 1996, disposing of all remaining claims.  As a result, the appeal ripened as of August 9, 1996, and we have jurisdiction under F.R.A.P. 4(a).  See Lewis v. B.F. Goodrich Co., 850 F.2d 641, 645-46 (10th Cir. 1988).

the context of a motion for summary judgment" under Utah law. See Cyprus Plateau Mining Corp. v. Commonwealth Ins. Co., 972 F. Supp. 1379, 1382 (D. Utah 1997) (applying Utah law) (citations omitted).

The Policy's Auto Exclusion clause excluded from coverage bodily injury resulting from operation or entrustment of an automobile to "any" insured. AS&S was unquestionably a named insured and Morris was unquestionably an insured under the Policy. However, the Policy's Separation of Insureds clause provides that the Policy applies to each named insured under the policy as if that named insured were the only named insured, and unquestionably Ambassador, AV&S, AM&S, and LSK were named insureds. Thus, under the Separation of Insureds clause, Ambassador, AV&S, AM&S, and LSK were each entitled to have the Policy construed as to it as if the Policy were issued only as to it alone. Under that scenario, AS&S and Morris would not be regarded as "insureds" when considering the coverage available to Ambassador, AV&S, AM&S, and LSK. Of course, if AS&S and Morris were not insureds, then the Auto Exclusion clause would not apply because it only excludes coverage for automobile accidents attributable to the operation or entrustment of an automobile to an "insured." Further, the Separation of Insureds clause provides that a complaint against any one insured should be applied "separately" as to each insured. The question before us is whether the use of the term "any insured" in the Auto Exclusion

clause excludes from coverage all automobile accidents attributable to any of the named insureds, or whether the Separation of Insureds clause read in conjunction with the term "any insured" in the Auto Exclusion clause means only that the single named insured and its employees that actually operated or entrusted the automobile involved in the accident are excluded under the Policy.

West American argues that the district court erred as a matter of law in interpreting the Policy by ruling that West American had a duty to defend Ambassador, AV&S, AM&S, and LSK, noting the broad exclusionary language used in the Auto Exclusion clause. Relying on the majority rule, West American cites a number of cases in other jurisdictions that broadly interpret the term "any insured" under an exclusion clause to negate coverage for all insureds, even innocent co-insureds, despite the inclusion of a severability clause similar to the Separation of Insureds clause at issue here. See Taryn E.F. by Grunewald v. Joshua M.C., 505 N.W.2d 418, 420, 422 (Wis. Ct. App. 1993) (applying Wisconsin law and holding "[T]he term 'any insured' unambiguously precludes coverage to all persons covered by the policy if any one of them engages in excludable conduct," notwithstanding a severability clause that provided, "Each person listed above is a separate insured under this policy."); see also Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n, 117 F.3d 1328, 1336 (11th Cir. 1997) (applying Florida law and holding that the phrase

"the insured" permits an innocent co-insured to recover for loss attributable to a guilty co-insured, while contrasting that to a policy covering "any insured," which would preclude an innocent co-insured from recovery for the acts of a guilty co-insured; however, it is not clear that the policy under consideration had an explicit "Separation of Insureds" or "Severability of Insureds" clause);[3] American Family Mut. Ins. Co. v. Copeland-Williams, 941 S.W.2d 625, 627, 629 (Mo. Ct. App. 1997) (applying Missouri law in holding "the phrase 'any insured' unambiguously precludes coverage to all persons covered by the policy if any one of them engages in excludable conduct," notwithstanding a severability clause that "the liability coverage applies separately to each insured . . . .") (citations and quotations omitted); California Cas. Ins. Co. v. Northland Ins. Co., 56 Cal. Rptr. 2d 434, 442 (Cal. Ct. App. 1996) (same, applying California law); Michael Carbone, Inc. v. General Accident Ins. Co., 937 F. Supp. 413, 420 (E.D. Pa. 1996) (same, applying New Jersey law to essentially the same policy language as the West American policy); Oaks v. Dupuy, 653 So.2d 165, 168-69 (La. Ct. App.

---

[3] When the insurance contract does contain a severability clause providing that "[t]his insurance applies separately to each insured," the Florida State District Court of Appeals has held that innocent co-insureds are covered, notwithstanding an exclusion clause which excludes coverage for any injury which is intended by "any insured." Premier Ins. Co. v. Adams, 632 So.2d 1054, 1056-57 (Fla. Dist. Ct. App. 1994). Thus, notwithstanding dicta in Golden Door, we conclude that Florida law would provide coverage to an innocent co-insured under contract provisions similar to those in the West American policy. Golden Door failed to discuss or distinguish Premier Ins. Co..

1995) (same, applying Louisiana law); <u>Gorzen v. Westfield Ins. Co.</u>, 526 N.W.2d 43, 45 (Mich. Ct. App. 1994) (same, applying Michigan law); <u>Chacon v. American Family Mut. Ins. Co.</u>, 788 P.2d 748, 752 (Colo. 1990) (same, applying Colorado law); <u>Great Central Ins. Co. v. Roemmich</u>, 291 N.W.2d 772, 774 (S.D. 1980) (same, applying South Dakota law).

In contrast to the cases cited by West American, some jurisdictions have found that the term "any insured" in an exclusion clause only applied to a single named insured and its employees and did not exclude other named but innocent insureds or their employees from coverage when the insurance policy also included a severability clause similar to the Separation of Insureds clause in this case. See <u>Premier Ins. Co. v. Adams</u>, 632 So.2d 1054, 1057 (Fla. Ct. App. 1994) (applying Florida law in holding that in order to give effect to all parts of the contract the court must construe the policy as excluding only coverage for separate insurable interest of insured who intentionally caused injury); <u>American Nat'l Fire Ins. Co. v. Estate of Fournelle</u>, 472 N.W.2d 292, 294 (Minn. 1991) (applying Minnesota law in holding, "[t]he doctrine of severability limits application of the exclusion to the insured claiming coverage and those deriving their insured status from that insured claiming coverage"); <u>Worcester Mut. Ins. Co. v. Marnell</u>, 496 N.E.2d 158, 161 (Mass. 1986) (applying Massachusetts law in holding that the severability clause modifies the exclusionary clause). In

addition, in cases interpreting exclusions for injuries to an employee in an insurance policy covering the employer and other named insureds that also includes a severability clause, a number of courts have construed the severability clause to mean that each insured has a separate policy and, consequently, to require the insurer to cover the named insureds other than the employer for liability arising from the employee's injuries. See Charles W. Benton, Annotation, Validity, Construction, and Application of Provision in Automobile Liability Policy Excluding from Coverage Injury to, or Death of, Employee of Insured, 43 A.L.R.5th 149 § 13(a) (1996) (citing cases).

We note that Utah has held that the term "any insured" in an exclusion is not necessarily ambiguous. See Allen v. Prudential Prop. & Cas. Ins. Co., 839 P.2d 798, 807 (Utah 1992). However, Utah courts have not addressed the interpretation of the term "any insured" directly in relation to a Separation of Insureds clause. Given the conflicting interpretations of the interplay between a severability clause and an exclusion clause using the term "any insured," we find the Policy in question in this case to be ambiguous. See also Cyprus Plateau Mining, 972 F. Supp. at 1382-86 (applying Utah law in holding that term "any insured" was ambiguous in light of other provisions of policy) (citing Pacific Indem. Co. v. Transport Indem. Co., 146 Cal. Rptr. 648, 651 (Cal. Ct. App. 1978) and United States Steel Corp. v. Transport Indem. Co., 50 Cal. Rptr. 576, 584-85

(Cal. Ct. App. 1966)); Transport Indem. Co. v. Wyatt, 417 So.2d 568, 571 (Ala. 1982) ("The wording ['any insured' in an exclusion clause] could be interpreted either to mean only singularly 'any one of the insureds' or could apply collectively to the whole group of insureds.").

Under Utah law, an ambiguous clause in an insurance policy is construed in favor of the insured. See Taylor v. American Fire & Cas. Co., 925 P.2d 1279, 1282 (Utah Ct. App. 1996) (citing Alf v. State Farm Fire & Cas. Co., 850 P.2d 1272, 1274 (Utah 1993)), cert. denied, 936 P.2d 407 (Utah 1997). Moreover, Utah law requires that exclusions in an insurance policy must be strictly construed against the insurer. See id. Because we find the relationship between Separation of Insureds clause and the Auto Exclusion clause to be ambiguous at best and capable of two different interpretations, we believe that Utah would construe the exclusion against West American and adopt the interpretation most favorable to Ambassador and the Other Franchisees.

Under this rationale, we find that because the Separation of Insureds clause treats each named insured separately as the only insured, the term "any insured" in the Auto Exclusion clause only applies to the single insured that actually owned the vehicle or whose employee operated the vehicle and the employees claiming insurance through that named insured. As a result, the Policy only excludes from coverage claims for bodily injury against either AS&S, the single

named insured that actually operated or entrusted the automobile, or Morris, its employee, and does not exclude claims against the Ambassador and the Other Franchisees, the other named insureds covered by the Policy.

Thus, we concur with the conclusion reached in those cases holding that the term "any insured" in an exclusion clause in a policy that also contains a severability clause does not exclude coverage for all insureds when only one insured is at fault.  See Premier Ins. Co., 632 So.2d at 1057 ("The policy contains an exclusion for intentional acts of 'any insured' and contains a severability clause creating a separate insurable interest in each individual insured. . . . [T]he most plausible interpretation is that the exclusionary clause is to exclude coverage for the separate insurable interest of that insured who intentionally causes the injury."); Worcester Mut. Ins. Co., 496 N.E.2d at 161 (severability clause provides that the policy "applies separately to each insured" and "requires that each insured be treated as having a separate insurance policy.").

West American further argues that the district court erred by finding that Morris was not an employee of Ambassador and the Other Franchisees.[4]  West

---

[4] Harper's complaint in the underlying litigation alleged that Morris was an employee of LSK, Inc., an entity separate from AS&S but one of Ambassador's franchisees.  West American relies in part on that allegation in its attempt to link Morris to Ambassador and the Other Franchisees.  However, the only evidence in the record regarding Morris' employment status clearly states that AS&S, not Ambassador or any of the Other Franchisees, employed Morris.  West American

(continued...)

- 12 -

American contends that the district court ignored the rule in Utah that an insurer must defend its insureds only if the allegations of the complaint, if proven, would result in liability for the insurer. See Deseret Fed. Sav. & Loan Ass'n v. United States Fidelity & Guar. Co., 714 P.2d 1143, 1147 (Utah 1986). West American notes that the complaint in the Harper litigation alleged that Ambassador and all the franchisees (including AS&S) are corporate alter egos. Thus, West American reasons that if Harper prevailed, Morris' negligence would be attributable to Ambassador and all the franchisees and West American would have no liability because the terms of the Auto Exclusion clause would then apply to Ambassador and the Other Franchisees as "any insured" who entrusted an automobile to Morris.

Deseret held that "the duty to defend is measured by the nature and kinds of risks covered by the policy and arises whenever the insurer ascertains facts which give rise to the potential of liability under the policy." Id. at 1146 (emphasis added). The court in Deseret found that the insurance company in that case did not have a duty to defend the insured because the plaintiff's allegations, which

---

[4](...continued)
presented no evidence to the contrary other than its reliance on the allegations in Harper's complaint. A party "may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Kaul, 83 F.3d at 1212. Therefore, summary judgment was appropriate on the issue of which company employed Morris.

concerned only matters specifically excluded under the policy, "<u>presented no</u>

<u>potential liability</u>" under the insurance policy.  <u>Id.</u> at 1147 (emphasis added).  In

this case, West American faced the possibility of liability to Ambassador and the

Other Franchisees for claims brought by Harper – such as lack of training – that

did not depend on the existence of an employer-employee relationship between

Morris and Ambassador or the Other Franchisees.   Because not all of Harper's

claims required the attribution of Morris' negligence to Ambassador and the

Other Franchisees to impose liability on them, the Auto Exclusion clause as we

have interpreted it would not have eliminated the possibility of West American's

liability for all of Harper's claims under <u>Deseret</u>.  Consequently, West American

had a duty to defend Ambassador and the Franchisees under Utah law.  <u>Cf.</u>

<u>Overthrust Constructors, Inc. v. Home Ins. Co.</u>, 676 F. Supp. 1086, 1091 (D. Utah

1987) ("Once an insurer has a duty to defend an insured under one claim brought

against the insured, the insurer must defend all claims brought at the same time,

even if some of the claims are not covered by the policy.").

## II.  Attorney Fees

The district court awarded Ambassador and the Other Franchisees $6,100 in

attorney fees to compensate them for the attorney fees expended in defending the

Harper litigation.  On appeal, Ambassador and the Other Franchisees argue that

the district court misapplied Utah law by denying them additional attorney fees

- 14 -

incurred in litigating West American's declaratory judgment action. Although neither the Policy nor Utah statutory law provides for an award of "fees for fees" here, Ambassador and the Other Franchisees contend that Utah recognizes that "such fees may be recovered as foreseeable consequential damages flowing from West American's breach of its contractual obligation to extend coverage and a defense." We review de novo the legal analysis providing the basis for the award or denial of attorney fees. See Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 765 (10th Cir. 1997).

The Utah case most analogous to the case at bar is Farmers Ins. Exch. v. Call, 712 P.2d 231 (Utah 1985), where an insurance company filed a declaratory judgment action to determine whether an exclusion clause negated its duty to defend the insured. The Supreme Court of Utah held that the company had a duty to defend the underlying action, see id. at 232, but refused to award the insured the fees the insured incurred in defending the declaratory judgment action, see id. at 237-38. The court stated:

> When faced with a decision as to whether to defend or refuse to defend, an insurer is entitled to seek a declaratory judgment as to its obligations and rights. . . . An award of attorney fees is not warranted 'where the plaintiff merely stated its position and initiated this action for determination of what appears to be a justiciable controversy.'

Id. (quoting Western Cas. & Sur. Co. v. Marchant, 615 P.2d 423, 427 (1980)); see also Overthrust, 676 F. Supp. at 1091 (applying Utah law); Crist v. Insurance Co.

- 15 -

of North America, 529 F. Supp. 601, 607 (D. Utah 1982) (applying Utah law); American States Ins. Co. v. Walker, 486 P.2d 1042, 1044 (Utah 1971).

We acknowledge that the viability of the Farmers line of cases may be in some doubt, given recent decisions of the Utah courts which have allowed parties to collect attorney fees incurred in litigation brought to collect fees. See Salmon v. Davis County, 916 P.2d 890 (Utah 1996); James Constructors, Inc. v. Salt Lake City Corp., 888 P.2d 665 (Utah Ct. App. 1994). In addition, we note that since Farmers was decided Utah has held that attorney fees can be considered an item of consequential damages flowing from an insurer's breach of contract. See Canyon Country Store v. Bracey, 781 P.2d 414, 420 (Utah 1989). However, Canyon Country did not address awarding "fees for fees," and both of the recent Utah cases that do address that situation are distinguishable from the instant action. In Salmon, which allowed a party to recover attorney fees expended in an action to regain fees, the Supreme Court of Utah construed a Utah statute which authorized the recovery of fees in an opinion which commanded no clear majority. See 916 P.2d at 895-96, 900. In James Constructors, the award of fees was rooted in a specific provision in an indemnity agreement. See 888 P.2d at 673-74. By contrast, our case involves neither a statutory authorization for, nor a contractual agreement regarding, fees. More importantly, however, none of these recent cases overruled or even cited the Farmers line of cases. Without clearer guidance that

- 16 -

the Supreme Court of Utah would overrule <u>Farmers</u>, we feel compelled to follow it, particularly because it arises in a factual context so clearly analogous to this case.

There is no evidence in the record that West American did not file this action in good faith or was stubbornly litigious. Consequently, under Utah law, there is no basis for awarding Ambassador and the Other Franchisees the attorney fees they incurred in defending this declaratory judgment action. <u>See</u> <u>Farmers</u>, 712 P.2d at 237; <u>Western Casualty</u>, 615 P.2d at 427; <u>cf.</u> <u>American States</u>, 486 P.2d at 1044.

## CONCLUSION

For the reasons discussed above, we AFFIRM the judgment of the district court.