Larry M. NATION, Special Administrator of the Estate of Jeffrey George, deceased, Appellant,

v.

STATE FARM INSURANCE CO., Appellee.

No. 70513.

Supreme Court of Oklahoma.

May 17, 1994.

Rehearings Denied Sept. 22, 1994.

C. Rabon Martin, Martin & Turner, Tulsa, for appellant.

Galen L. Brittingham, Jody R. Nathan, Thomas, Glass, Atkinson, Haskins, Nellis & Boudreaux, Tulsa, for appellee.

PER CURIAM:

This is a claim against State Farm Insurance Co. under three automobile liability policies. Each policy contained a "household exclusion", providing that the liability insurance does not cover injury to "any member of the family of an insured residing in the same household of the insured." The question is whether that exclusionary clause runs counter to the Oklahoma statute *requiring* minimum limits of liability insurance as a condition of operating a vehicle. Under the facts of this case, and as to the policies in question, we find that the statute does require invalidation of the household exclusion up to the amount of liability insurance required by statute.

Michael George fell asleep while driving a vehicle borrowed from Frances Morgan. An accident ensued, killing George's five-year-old son, Jeffrey. The vehicle was insured by State Farm Insurance Company under a policy purchased by Morgan, the liability coverage being $100,000. George also had two policies issued by State Farm, the liability limits on both of these being $25,000. All

three polices contained both liability and uninsured motorist coverage. Total liability coverage was $150,000 and total uninsured motorist coverage was $45,000.

The administrator of the deceased son's estate filed a claim with State Farm under the liability and UM portions of all three policies. State Farm denied the claim, asserting the household exclusion as the basis for denial under all three policies. This exclusion provides that insurance coverage shall not extend to members of the family of the insured who reside in the same household. It is not disputed that George, the father, was an insured under all three policies, and it is the liability insurance coverage afforded by these three policies that is contested today.

The administrator filed suit in state court against State Farm and George. In turn, State Farm filed an action in federal court, asking for a declaration that the household exclusion was valid under current Oklahoma law. The federal court agreed, except as to the exclusion's application to UM coverage. The administrator appealed to the Tenth Circuit, which appeal has been stayed pending this proceeding. State Farm paid the total UM coverage of $45,000.

A non-jury trial was held in the state court action, resulting in a judgment against State Farm and George. The total judgment was for $130,000, but the payment of UM benefits was subtracted from the total, leaving $85,000 owing on the judgment. The administrator filed a garnishment proceeding against State Farm seeking recovery of the remaining $85,000. State Farm denied responsibility for the judgment. The trial court granted State Farm's motion for summary judgment.

The plaintiff/administrator appealed and the Court of Appeals reversed. Its basis was that Court's belief that the household exclusion was invalid in light of Oklahoma's legislation requiring a minimum amount of liability insurance. The court ordered that the estate be permitted to recover up to the limits of the policies. We granted certiorari to review this question of first impression.

The plaintiff urges that the household exclusion is invalid because it violates the policy

behind Oklahoma's Compulsory Liability Insurance Law, 47 O.S.Supp.1983 Sections 7–600 through 7–607. State Farm, on the other hand, asserts that this Court upheld the exclusion in *Looney v. Farmers Insurance Group*, 616 P.2d 1138 (Okla.1980), and that we should do likewise today.

It is the Court's judgment today that upon the facts of this case the household exclusion is invalid insofar as it attempts to defeat the legislature's mandate of a minimum amount of liability insurance coverage available for persons in the position of the deceased passenger here. The plaintiff may recover the statutory minimum amount of $10,000 each, or a total of $30,000, under the three liability policies. The trial court's summary judgment for State Farm is reversed and the District Court is instructed to enter judgment for the plaintiff consistent herewith.

The issues raised in the dissent by Wilson, J., were neither advanced nor briefed by the parties. We express no opinion on how any of these legal problems collateral to this case should be settled.

LAVENDER, V.C.J., and SIMMS, KAUGER and SUMMERS, JJ., concur.

OPALA and WATT, JJ., concur in judgment.

HODGES, C.J., and HARGRAVE and ALMA WILSON, JJ., dissent.

SUMMERS, Justice, concurring:

I agree that the household exclusion clause violates the legislature's mandate of compulsory liability insurance. I would hold the clause invalid up to the amount of the statutorily required minimum coverage. Above that required amount I would permit the application of principles governing insurance contracts generally to determine the coverage in effect.

## I. COMPULSORY LIABILITY INSURANCE AND THE HOUSEHOLD EXCLUSION

In 1976, Oklahoma joined the majority of states by enacting a Compulsory Insurance Law. This law, as amended in 1983, requires liability insurance as follows:

On an after January 1, 1983, every owner of a motor vehicle registered in this state, other than a licensed used motor vehicle dealer, shall, at all times, maintain in force with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle. Every person, while operating or using a motor vehicle registered in this state which is not owned by such person, shall maintain in force security for the payment of loss resulting from the liability imposed by law for bodily injury, death or property damage sustained by *any person* arising out of the operation or use of the vehicle, unless such security has been provided by the owner in accordance with this section which does not exclude said person from coverage. 47 O.S.1991 Section 7–601(B). (emphasis mine)

The minimum required coverage, under Section 7–204, is $10,000.00 per person, $20,000.00 per accident, and $10,000.00 for property damage. The purpose behind this legislation was to mandate that "any vehicle operated on the highways of Oklahoma be secured against liability to innocent victims of the negligent operation or use of the insured vehicle." *Young v. Mid–Continent Cas. Co.,* 743 P.2d 1084, 1088 (Okla.1987). This statute embodies a public policy that innocent victims of the negligent operation of a motor vehicle should be compensated for their injuries. *Id.* at 1987. Clearly, the legislature contemplated that no vehicle should be permitted to operate on the roads of Oklahoma unless the vehicle is insured or "secured" according to the requirements set out in the Act. *Beavin v. State ex rel. Dept. of Public Safety,* 662 P.2d 299, 302 (Okla.1983).

This legislative intent is the driving force behind our interpretation of the statute. "When a policy expressly states that it provides coverage required by Oklahoma's compulsory liability insurance laws, the policy must be strictly construed against the insurer by a standard consistent with its terms

and with the statutory policy it embodies." *Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery,* 747 P.2d 947, 952 (Okla. 1987). While strictly construed against the insurer, the statute must be broadly construed to accomplish the legislative goal. *Id.*

The administrator asserts that the legislative intent of providing compensation to injured victims, together with this Court's partial abrogation of the doctrine of parental immunity, leads to the conclusion that the household exclusion is invalid. He asserts that by allowing a child to recover from the parent to the extent of liability coverage, this ·Court has recognized the trend toward compensation for tortious acts by a parent against a child. This idea, when considered in light of the strong policy of the compulsory liability insurance laws, leads to the inevitable conclusion that the household exclusion is at least partially invalid.

## A. PARENTAL IMMUNITY

At common law the doctrine of family, or parental, immunity was a defense to lawsuits between spouses and between parents and children. This doctrine prevented the child or spouse from collecting damages for torts committed by another family member. The trend, however, is to abolish this immunity. Oklahoma has abrogated spousal immunity both by statute and case law. 43 O.S.Supp. 1989 § 214; *Fiedeer v. Fiedeer,* 42 Okla. 124, 140 P. 1022 (1914). We have also partially abrogated the doctrine as between children and parents. *Unah v. Martin,* 676 P.2d 1366, 1370 (Okla.1984).

In *Unah* an unemancipated minor brought suit against his father for injuries sustained in an automobile accident. After noting that the modern trend in sister jurisdictions is to abolish the doctrine[1], we agreed that it should be abrogated to the extent of the parent's liability insurance. To reach this conclusion we addressed the reasoning behind the creation of the immunity: the pro-

1. *Unah,* 676 P.2d at 1367, fn. 2, lists the jurisdictions which have abolished or modified the doctrine of parental immunity.

tection of the family congeniality,[2] and the protection of insurance companies from collusion. As for the interests of the family, we agreed with the Arizona Supreme Court that the "domestic tranquility argument is hollow, for in reality the sought after litigation is not between child and parent but between child and parent's insurance carrier." *Streenz v. Streenz*, 106 Ariz. 86, 88, 471 P.2d 282, 284 (1970). The argument as to fraud and collusion is counteracted by the notion that the trier of fact is responsible for detecting such things.

However, we did limit this abrogation of parental immunity by stating that the child may recover only to the extent of the liability insurance in effect. In so holding, we honored the "domestic tranquility" argument by providing that only the insurer, and not the parent, is required to pay.

## B. THE HOUSEHOLD EXCLUSION

Although State Farm admits that parental immunity has been modified, it urges that this new development does not require invalidation of the exclusion. As support State Farm relies on *Looney v. Farmers Ins. Group*, 616 P.2d 1138 (Okla.1980) *overruled in part*, *Young v. Mid–Continent Cas. Co.*, 743 P.2d 1084 (Okla.1987). In *Looney* a wife brought suit against her husband for damages sustained in an automobile accident. The insurer denied coverage based on the household exclusion. Both the husband and wife were named insureds under the policy. We denied recovery because Looney was a named insured on the policy and the policy excluded coverage for the named insureds.

Aside from the *Looney* decision the Oklahoma courts have repeatedly struck down provisions that interfere with the legislature's policy of mandating liability insurance to protect innocent victims. In *Hibdon v. Casualty Corp. of America, Inc.*, 504 P.2d 878 (Okla.Ct.App.1972) (Released for publication by the Oklahoma Supreme Court), the Court struck down an exclusion in a liability policy which excluded from coverage the passengers in a vehicle. It held that the legislature intended to include passengers within the scope of mandatory coverage. *Id.* at 882.

This Court held that a policy exclusion violated the compulsory liability insurance statutes in *Young v. Mid–Continent Cas. Co.*, 743 P.2d 1084 (Okla.1987). The policy there excluded coverage if the insured vehicle was operated by anyone under twenty-five except the named insured or a resident/relative. We observed that Section 7–601 required mandatory coverage for injury caused to "any person." We noted that *Looney* had upheld a provision excluding coverage for household members, but also recognized that part of the underlying rationale for *Looney* had been undermined in the later case of *Beavin v. State ex. Rel. Dept. of Public Safety, supra*. In holding the exclusion invalid, we stated "the provisions of our compulsory liability insurance legislation, as it stood at the time of this case, contained no indications of an intent to allow any differentiation as to coverage available to any victim of an insured vehicle's operation or use." *Young*, 743 P.2d at 1088.

Later, in *Equity Mutual, supra*, we again held a policy exclusion invalid in light of the compulsory liability insurance statutes. There the policy exclusion limited coverage to a two hundred mile radius from the permissive user's address. Reiterating that the purpose behind Section 7–601 was to "provide compensation for injury or loss to members of the public with claims that are actionable," we ruled that statutory policy required, at the very minimum, coverage for all claims which arise within the state, and that the exclusion was invalid.[3]

The Tenth Circuit in *State Farm Mut. Ins. Co. v. Schwartz*, 933 F.2d 848 (10th Cir.1991), has recently addressed this exact question. State Farm sought declaratory judgment

---

2. *See Tucker v. Tucker*, 395 P.2d 67, 68 (Okla. 1964), later overruled by *Unah*, wherein we expressed concern for the preservation of the family unit and refused to permit a suit by a child against his parent.

3. We noted that other jurisdictions had held similar provisions invalid. *Pennsylvania Nat. Mut. Cas. Ins. v. Parker*, 282 S.C. 546, 320 S.E.2d 458 (Ct.App.1984); *DeWitt v. Young*, 229 Kan. 474, 625 P.2d 478 (1981); *Kasson & Keller, Inc. v. Centennial Ins. Co.*, 79 Misc.2d 450, 359 N.Y.S.2d 760 (N.Y.1974).

that it was not obligated to defend or indemnify the insured in an action brought by her children. The basis of State Farm's claim was the household exclusion. The Court framed the issues as: (1) whether the policy definition of the children as "insureds" precludes recovery, and (2) whether the household exclusion in the policy offends Oklahoma public policy. As to the first question, the Court found it important that the children were insureds as defined by the policy, but were not named insureds:

> While the linguistic distinction between a "named insured" and an "insured" may not be significant, it does point to a more serious problem. The spouse of the policy holder is much more likely than the children of the policyholder to be a true consenting party to the contract. It is highly unlikely that household members such as minor, unemancipated children will have consented, or are legally able to consent, to the terms of the insurance contract.[4]

The Circuit Court held that to permit insurers to prevent suits by children against their

parents simply by defining the children as "insureds" would undermine the holding of *Unah* and its partial abrogation of parental immunity. It went on to hold that the exclusion, in light of *Young* and *Equity Mutual*, offended Oklahoma public policy.

Most states which have considered this exclusion in light of their own compulsory insurance laws have held it to be against public policy.[5] Some have held it invalid only as to household members other than the spouse. *See Allstate Ins. Co. v. Anzalone*, 119 Misc.2d 222, 462 N.Y.S.2d 738, 740 (N.Y.App.Div.1983). Some have held it invalid only to the statutorily-required limits rather than to the extent of insurance coverage. *See Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865, 866 (Ky.1981) and *Farmers Ins. Exchange v. Young*, 108 Nev. 328, 331, 832 P.2d 376, 379 (1992). But to one degree or another, at least twenty-two states have held it invalid.

I agree that the household exclusion is invalid as contrary to public policy, at least to

**4.** This rationale was based on *Young v. Mid–Continent, supra,* and *Unah, supra.*

**5.** The following states have held the household exclusion invalid: **Arizona** in *Arceneaux v. State Farm Mut. Auto. Ins. Co.*, 113 Ariz. 216, 550 P.2d 87 (1976) (void to extent of minimum statutory coverage); **Colorado** in *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585 (Colo.1984); **Delaware** in *State Farm Mut. Auto. Ins. Co. v. Wagamon,* 541 A.2d 557 (Del.1988); **Georgia** in *Stepho v. Allstate Ins. Co.*, 259 Ga. 475, 383 S.E.2d 887 (1989); **Idaho** in *Farmers Ins. Group v. Reed,* 109 Idaho 849, 712 P.2d 550 (1985); **Kansas** in *De-Witt v. Young,* 229 Kan. 474, 625 P.2d 478 (1981); **Kentucky** in *Beacon Ins. Co. v. State Farm Mut. Ins. Co.*, 795 S.W.2d 62 (Ky.1990) and *Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865 (Ky. 1981); **Maryland** in *Jennings v. Government Empl. Ins. Co.*, 302 Md. 352, 488 A.2d 166 (1985); **Michigan** in *State Farm Mut. Auto. Ins. Co. v. Sivey,* 404 Mich. 51, 272 N.W.2d 555 (1978); **Missouri** in *Halpin v. Amer. Family Mut. Ins. Co.*, 823 S.W.2d 479 (Mo.1992); **Montana** in *Allstate Ins. Co. v. Hankinson,* 244 Mont. 1, 795 P.2d 480 (1990) and *Transamerica Ins. Co. v. Royle,* 202 Mont. 173, 656 P.2d 820 (1983); **Nevada** in *Farmers Ins. Exch. v. Young,* 108 Nev. 328, 832 P.2d 376 (1992) and *Neal v. Farmers Ins. Exch.*, 93 Nev. 348, 566 P.2d 81 (1977); **New Jersey** in *Kish v. Motor Club of America Ins. Co.*, 108 N.J.Super. 405, 261 A.2d 662 (N.J. 1970), *cert. denied,* 55 N.J. 595, 264 A.2d 68 (1970); **New Mexico** in *Estep v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 105, 703 P.2d 882

(1985); **New York** in *Allstate Ins. Co. v. Anzalone,* 119 Misc.2d 222, 462 N.Y.S.2d 738 (1983); **North Dakota** in *Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975); **Oregon** in *Dowdy v. Allstate Ins. Co.*, 68 Or.App. 709, 685 P.2d 444 (1984), *review denied,* 298 Or. 172, 691 P.2d 481 (1984); **South Carolina** in *Jordan v. Aetna Cas. & Surety Co.*, 264 S.C. 294, 214 S.E.2d 818 (1975); **South Dakota** in *Cimarron Ins. Co. v. Croyle,* 479 N.W.2d 881 (S.D.1992); **Texas** in *National County Mut. Fire Ins. Co. v. Johnson,* 829 S.W.2d 322 (Tex.Ct.App.1992); **Utah** in *State Farm Mut. Auto. Ins. Co. v. Mastbaum,* 748 P.2d 1042 (Utah 1987) and *Farmers Ins. Exch. v. Call,* 712 P.2d 231 (Utah 1985); **Washington** in *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wash.2d 203, 643 P.2d 441 (1982); and **Wyoming** in *Allstate Ins. Co. v. Wyoming Ins. Dept.*, 672 P.2d 810 (Wyo.1983).

The following states have upheld the exclusion: **Massachusetts** in *Hahn v. Berkshire Mut. Ins. Co.*, 28 Mass.App. 181, 547 N.E.2d 1144 (1989); **Florida** in *Amica Mut. Ins. v. Wells,* 507 So.2d 750 (Fla.Ct.App.1987); **Indiana** in *Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096 (Ind.1985); **Rhode Island** in *Faraj v. Allstate Ins. Co.*, 486 A.2d 582 (R.I.1984); **Iowa** in *Walker v. American Family Mut. Ins. Co.*, 340 N.W.2d 599 (Iowa 1983); **Alabama** in *Hutcheson v. Alabama Farm Bureau Mut. Ins. Co.*, 435 So.2d 734 (Ala.1983); **Illinois** in *Severs v. Country Mut. Ins. Co.*, 89 Ill.2d 515, 61 Ill.Dec. 137, 434 N.E.2d 290 (1982); **Pennsylvania** in *Paiano v. Home Ins. Co.*, 253 Pa.Super. 519, 385 A.2d 460 (1978).

the extent of the statutorily mandated coverage requirements. I support the Montana Supreme Court's statement that the compulsory liability insurance laws "establish[ ] that when policy language excludes coverage otherwise statutorily mandated then that policy language is void as contrary to public policy." *Allstate Ins. Co. v. Hankinson*, 244 Mont. 1, 795 P.2d 480, 482 (1990). See also *Farmers Ins. Group v. Reed*, 109 Idaho 849, 853, 712 P.2d 550, 554 (1986).

Our *Looney* decision is not determinative of this controversy. There the policy provided that the term "named insured" included, by definition, the spouse, if the spouse resided in the household. A major basis of our holding was the finding that the wife was thus a named insured in the insurance policy. We said:

> The appellant [injured wife] was more than a mere member of the family of the *insured*; she was the *insured*. Her relationship with the defendant Looney surpasses mere household member status. Her relationship places her within the policy definition of named insured. Surely the legislature, in amending Section 521(e), did not intend to allow the named insured, although a passenger, coverage under this section. (Court's emphasis.) *id.* at 1141.

As such we concluded that the legislative purpose behind the enactment of compulsory liability insurance laws was not to protect the injured policy holder, but rather to protect innocent third persons injured by the insured.

*Looney* simply does not apply here, where the injured passenger was not a named insured. Here the child of an insured was injured and killed. The child was obviously not a party to the contract, nor the tortfeasor. Based on our compulsory liability insurance law, innocent victims like the child here are to be protected by liability insurance.[6] Thus, this exclusion—which would preclude

recovery for innocent victims if they are family members—is directly contrary to the Oklahoma statutes as applied to this case.

## II. THE EXTENT OF LIABILITY

State Farm urges that if the exclusion is invalid, its invalidity is limited to the statutory minimum required coverage. I agree. In *Equity Mutual, supra,* a policy exclusion was *held invalid to the extent of the minimum statutory coverage.* Likewise, in *Young v. Mid–Continent, supra,* we held that an exclusion was invalid because the statute's intent *"require[d] a minimum of protection to any party who is not at party to the contract."* (Emphasis Added). *Id.* at 1088.

There is no public policy which requires our interference with the insurance contract between the parties as long as the insurance statutes are complied with. Several states have made the same distinction when considering the extent to which the household clause is invalid. In *Farmers Ins. Exch. v. Young,* 108 Nev. 328, 331, 832 P.2d 376, 379 (1992), the Nevada Supreme Court held the exclusion invalid only to the extent of statutorily required coverage. The court pointed out that such a holding permitted the innocent victims to recover as intended by the legislature, but also allowed for the insurer to plan for the risks imposed.

In *Arceneax v. State Farm Mut. Auto. Ins. Co.,* 113 Ariz. 216, 218, 550 P.2d 87, 89 (1976), the Arizona Supreme Court adopted a similar rule. There, the exclusion was held invalid in light of the public policy evidenced by legislation. However, the court stated "[i]t seems logical that the contract of insurance here need provide for members of the household nothing more than the Act requires, and thereafter the exclusionary clause is viable."[7]

I find this to be a simple and logical rationale. Rather than interfering with the con-

---

6. Because we answer only the question briefed, and not hypothetical ones, I leave for another day the question that will arise should an insurer define or include small children as named insureds.

7. *See also Halpin v. American Family Mut. Ins. Co.,* 823 S.W.2d 479, 482 (Mo.1992); *Cimmarron*

*Ins. Co. v. Croyle,* 479 N.W.2d 881, 884 (S.D. 1992); *Farmers Ins. Exch. v. Call,* 712 P.2d 231, 236 (Utah 1985); *Allstate Ins. Co. v. Wyoming Ins. Dept.,* 672 P.2d 810, 823 (Wy.1983); *Bishop v. Allstate Ins. Co.,* 623 S.W.2d 865, 866 (Ky. 1981); *DeWitt v. Young,* 229 Kan. 474, 625 P.2d 478, 483 (1981).

tractual rights of the insured and insurer beyond what is required by statute, I would confine the household exclusion's invalidity to only that which is required by our compulsory liability insurance laws. This construction of the exclusion is consistent with the policies behind the statutes. Above this limit the parties are free to contract without judicial interference. Where insurance coverage is not mandated the parties are free to contract for insurance to cover such risks, or not, as they see fit. *See State Farm v. Greer,* 777 P.2d 941, 943 (Okla.1989); *Wiley v. Travelers Ins. Co.,* 534 P.2d 1293 (Okla.1974). Apart from the public policy as enunciated by the legislature in its Compulsory Insurance Law there is no reason for the courts to rewrite the contract between the parties.

I therefore concur in the Court's opinion and in its judgment to award Plaintiff the statutorily required coverage on each liability policy.

I am authorized to state that V.C.J. LAVENDER joins in these views.

OPALA, Justice, with whom WATT, Justice, joins, concurring in the court's judgment.

Today's judgment injects *some more* ambiguity into Oklahoma's jurisprudence. Although this case presents an opportunity to revisit extant case law on the validity of household exclusion clauses and to harmonize it with the provisions of the compulsory liability insurance article in the "Financial Responsibility Act" [Article or Act],[1] the court, *unable to garner five votes for any analysis of its disposition,* stays on a clouded course by declaring invalid the household exclusion clause in this case. While I agree in the result reached by the court—that the plaintiff-estate should be entitled to the statutory minimum of $10,000 on each of the three liability insurance policies in suit—I write

separately to provide my own rationale for acceding to the court's disposition. My concern is that lower courts will misconstrue *today's* judgment as a license to take an expansive view of public policy. Broad contractual invalidation does not flow from our compulsory insurance laws. Until this court *revisits the issue* before us and *clarifies the ambiguity created by* today's judgment, lower courts should continue to follow extant jurisprudence. A household exclusion clause is offensive to the Act *only insofar as it leaves sans minimum protection those related members who do not own a car.* This plaintiff's decedent, who stands in the *wrongly* excluded class, is hence entitled to minimum mandated coverage. It is for this reason that I concur *in today's judgment.*

# I

## THE ANATOMY OF LITIGATION

Frances Morgan [Owner] gave J. Michael George [Father] permission to borrow her car on August 6, 1983. Father fell asleep at the wheel, crashing the car and killing his five-year-old son, Jeffrey George [Son].[2]

Owner's vehicle was insured by the defendant, State Farm Insurance Company [State Farm or Insurer], which had issued a liability insurance policy in the amount of $100,000. Father was insured *with the same insurer* by two policies which provide liability coverage of $25,000 per policy. The total liability protection under the three policies is $150,000. In addition to liability coverage, all three insurance policies afford uninsured motorist [UM] coverage in the amount of $15,000 each, for a total of $45,000.

The two *liability policies* issued to Father and the policy issued to Owner contain identical *exclusionary* provisions. They deprive of coverage two classes of persons: (1) the

---

1. For the pertinent terms of 47 O.S.1991 § 7–601(B) (Article VI. Compulsory Liability Insurance of the "Financial Responsibility Act") and 47 O.S.1991 § 7–324(b)(2), which sets out the specific requirements for a motor vehicle liability policy, see *infra* note 15.

2. Although the record is not crystal clear on this point, I would assume that a five-year old child who is not yet qualified to hold a driver's license,

47 O.S.Supp.1992 § 6–101(B)(5), did not own an insured car at the time of his death. All the insurance policies covering this event are in the record and none of them shows the child as the named insured. From the absence in the record of an automobile policy designating the child as the named insured, I would infer that he did not own a car.

insured; and (2) members of the family of an insured who reside in the same household as the insured. The policies define "insured" persons as the named insured; the spouse of the named insured if he or she is a resident of the same household; relatives of the named insured if they reside in the same household; drivers operating with permission of the insured; and certain organizations.[3]

Father was an insured under all three policies—as a named insured under his two policies and a permissive user under Owner's policy. *Son, who was a relative and a member of the insured's household, was excluded from coverage by virtue of the household exclusion clauses of the policies.*

As special administrator of Son's estate [Estate], Larry M. Nation claimed against State Farm for full liability and UM coverage provided by the three policies. Insurer *denied* liability *under all three policies,* asserting the household exclusion clauses in each of the policies relieve it from obligation to the Son who was a member of the insured's household.

The Estate sued Father and State Farm, claiming the clause is invalid and thus does not exonerate State Farm of its liability under the policies. During the pendency of the lawsuit, State Farm brought an action in the United States District Court for the Northern District of Oklahoma to declare the household exclusion clause to be valid under Oklahoma law. The federal court ruled the exclusion was valid with respect to the liability insurance, but held State Farm liable for the UM coverage, noting that the household exclusion *rendered the Father-operated vehicle uninsured.* State Farm subsequently admitted liability under the three UM policies and tendered to the Estate $45,000. On appeal to the United States Court of Appeals for the Tenth Circuit, the Estate sought corrective relief from the trial court's denial of insurer's liability coverage. *The federal appeal has been stayed pending the outcome of this state-court review.*

After a non-jury trial, the state district court entered judgment against Father in the amount of $130,000. From this figure, the court deducted the $45,000 already received by the Estate in UM coverage proceeds.

In a postjudgment garnishment proceeding against State Farm, the Estate sought payment for the balance under the liability policies claimed to be due—$85,000. Both the Estate and State Farm moved for summary disposition of the proceeding. *The trial court summarily adjudicated the garnishment claim in favor of State Farm.* The Estate appealed. The Court of Appeals *reversed* the nisi prius decision and remanded the cause, *finding the household exclusion invalid* and holding the Insurer liable *to the extent of the three policies' total liability limits.*

---

3. The policies provide in pertinent part:

"INSURING AGREEMENTS

\* \* \* \* \* \*

To pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* because of
(A) *bodily injury* sustained by other *persons,*
(B) property damage,

\* \* \* \* \* \*

EXCLUSIONS—SECTION I
THIS INSURANCE DOES NOT APPLY UNDER:

\* \* \* \* \* \*

(h) COVERAGE A, TO *BODILY INJURY* TO ANY *INSURED* OR ANY MEMBER OF THE FAMILY OF AN *INSURED RESIDING* IN THE SAME HOUSEHOLD OF THE *INSURED;*

\* \* \* \* \* \*

Definitions—Section I

Insured—the unqualified word 'insured' includes:
(1) the named insured, and
(2) if the named insured is a *person* or *persons,* also includes his or their spouse(s), if a *resident* of the same household, and
(3) if *residents* of the same household, the relatives of the first *person* named in the declarations, or of his spouse, and
(4) any other *person* while using the *owned motor vehicle,* PROVIDED THE OPERATION AND THE ACTUAL USE OF SUCH VEHICLE ARE WITH THE PERMISSION OF THE NAMED INSURED OR SUCH SPOUSE AND ARE WITHIN THE SCOPE OF SUCH PERMISSION, and
(5) under coverages A and B any other *person* or organization, but only with respect to his or its liability for the use of such *owned motor vehicle* by an *insured* as defined in the four subsections above." (Emphasis original.)

## II

### PUBLIC POLICY AND THE HOUSEHOLD EXCLUSION CLAUSE

Ambiguous precedent can be a license for teleological idealism.[4] My concern is that lower courts might give today's disposition an overexpansive sweep by following trends present in jurisdictions known for their anti-insurance jurisprudence and opting for broad invalidation of all household exclusion clauses.

### A.

#### Legal Immunity And Contractual Exclusion

At common law the rule of parental immunity prevented unemancipated minors from suing their parents for ordinary negligence. Although this rule is grounded on valid principles, the modern trend has been to abolish or abridge the parental immunity doctrine.[5]

One reason for the bar of intrafamily claims is that lawsuits by children against their parents were believed to disrupt family congeniality.[6] This rationale has been widely criticized and is often not relevant where third-party insurance companies pay the cost of the judgment.[7] Indeed, many courts take the view that when a third party pays damages to the injured family member, the lawsuit relieves, rather than increases, stress within the family circle.[8]

Another reason for intrafamily immunity is the potential for fraudulent and collusive claims where a third-party insurance company may be liable for the judgment.[9] It is possible for insured parties to feign injuries or fraudulently attribute them to automobile-related mishaps when in fact they were caused by other events. Many jurisdictions deem it unnecessary to bar suits on legal immunity grounds because intrafamilial fraud is believed to be discoverable and preventable on proper investigation.[10]

Although in vehicular negligence cases intrafamily immunity (to the extent of a parent's automobile liability insurance) has previously been eroded,[11] today's judgment could be misinterpreted as going well beyond this court's extant jurisprudence [12] and beyond legislative mandate [13]—by forbidding neutrality through contractual agreements. This is *not* my view of today's *per curiam* disposition which stands narrowly limited to the facts. Insurance liability contracts typically contain standard clauses which deny coverage to members of the insured's household. Insurers argue these household exclusions protect them from fraudulent and collusive lawsuits, the cost of which would be passed along to other policyholders. *While many jurisdictions dismiss these concerns as invalid, the insurer should be allowed to restrict coverage based upon its experience, irrespective of how insubstantial courts* [14] *may consider these business concerns to be, so long as the limitations do not run afoul of clear policy of the law.*

---

4. Webster's Third New International Dictionary at 2350 (1961) defines teleological idealism as "an idealistic philosophy that endeavors to reconcile the ethicoreligious idealism of Fichte with the stricter critical idealism of Kant." This concept, as applied to jurisprudence, denotes a result not reached by a logical or legal *mechanism*, but by one in which decisions are made based upon a *judge's own vision of utility* rather than on statutory objectives.

5. *Unah By and Through Unah v. Martin*, Okl., 676 P.2d 1366, 1367 n. 2 (1984).

6. *Id.* at 1368, *citing Tucker v. Tucker*, Okl., 395 P.2d 67 (1964).

7. *Unah*, *supra* note 5 at 1368–1369.

8. *Id.* at 1369–1370.

9. *Id.* at 1369.

10. *Id.* at 1369–1370.

11. *Id.* at 1370.

12. *Young v. Mid–Continent Casualty Co.*, Okl., 743 P.2d 1084, 1088 (1987). "We do not necessarily find that this intent is so broad as to eliminate all possible bargaining regarding liability exclusions which may be contained in the required liability insurance policies." *Id.*

13. *See* 47 O.S.1991 § 7–324(b)(2), *infra* note 15.

14. *Unah*, *supra* note 5 at 1369.

## B.

### Statutorily Articulated Public Policy And Oklahoma's Compulsory Insurance Law

Oklahoma's Financial Responsibility Act requires that owners maintain liability insurance on their automobiles.[15] By requiring owners to guarantee their financial responsibility in case of an accident, the legislature expressed a recognizable public policy that motorists carry insurance so victims of their negligence can be compensated. This clearly articulated public policy *must* override private agreements that restrict coverage where the contractual strictures do not square with the purpose of the Act.[16]

Insurance policy clauses which operate to deny coverage to the general public are void as contrary to statutorily articulated public policy.[17] The Act's principal purpose is to protect "the *public* using the highways from financial hardship which may result from the use of automobiles by financially irresponsible persons."[18] In *Young v. Mid–Continent Casualty Co.*,[19] this court examined a provision in an automobile policy which withheld liability coverage from the insured vehicle if it were operated by one under the age of 25. The restriction, we concluded, was *contrary to statutorily expressed public policy* because it impermissibly limited the scope of an insured's liability vis-a-vis innocent victims of the operator's negligence.[20] In *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery, Inc.*,[21] we likewise declared void a policy covenant which provided that the liability coverage would not apply when the vehicle was operated beyond a 200–mile radius of the owner's place of business. This restriction had the effect of rendering the vehicle uninsured vis-à-vis statutorily protected third parties. In yet another case— *State Farm Auto Ins. Co. v. Greer*[22]—we concluded that when the terms of an insurance contract bar all potential claimants, they are void as contrary to the public policy expressed in the compulsory insurance law.

*Young, Equity Mutual* and *Greer* can be distinguished from the situation at bar. The covenants present in those policies would have excluded from coverage *all* potential claimants. The covenant of which the Estate complains in this case *does not* withhold pro-

15. The terms of 47 O.S.1991 § 7–601(B) provide in pertinent part:

"B. On and after January 1, 1983, every owner of a motor vehicle registered in this state, other than a licensed used motor vehicle dealer, shall, at all times, maintain in force with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury, death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle...."

The quoted language was not changed by the 1993 amendment (Okl.Sess.L.1993, Ch. 301, § 1, eff. Sept. 1, 1993). Neither does the amendment have any effect on this litigation.

The terms of 47 O.S.1991 § 7–324(b)(2) require an owner's liability insurance policy to:

"insure the person named therein and any other person except as herein provided, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such vehicle or vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such vehicle, as follows: Ten Thousand Dollars ($10,000.00) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, Twenty Thousand Dollars ($20,000.00) because of bodily injury to or death of two or more persons in any one accident, and Ten Thousand Dollars ($10,000.00) because of injury to or destruction of property of others in any one accident."

16. *Id.*

17. *Young, supra* note 12 at 1087–1088; *Equity Mut. v. Spring Valley Wholesale Nursery*, Okl., 747 P.2d 947, 953–954 (1987).

18. *Looney v. Farmers Ins. Group*, Okl., 616 P.2d 1138, 1142 (1980), *citing New York Underwriter's Ins. Co. v. Superior Court of Arizona*, 104 Ariz. 544, 456 P.2d 914, 915 (1969) (emphasis in the original).

19. *Young, supra* note 12 at 1088.

20. *Id.* at 1088.

21. *Equity, supra* note 17 at 952.

22. Okl., 777 P.2d 941, 943 (1989).

tection from *all* members of the public, but rather *would bar only a very small class of potential claimants: car passengers related to the insured who reside in the insured's household.*

Insurance policy clauses that place beyond coverage narrow classes of potential victims *have been upheld as not contrary to public policy.*[23] In *Looney v. Farmers Ins. Group,*[24] a woman was injured when her husband wrecked the car in which she was riding. The wife sued to recover under an insurance policy covering the vehicle. The insurance company defended against the claim by contending she was excluded as a named insured and by the household exclusion clause. We held the household exclusion valid because *the wife of an insured was not a member of the public* which the compulsory insurance law was intended to protect.[25] *Looney* supports the distinction that *policy clauses which withhold coverage from the general public are void, but those which exclude but a narrow class of persons do not offend public policy.*

23. *Looney, supra* note 18 at 1142; *Farmers Ins. Co., Inc. v. McClain,* 603 F.2d 821, 823–824 (10th Cir.1979).

24. *Looney, supra* note 18.

25. *Id.* at 1142.

26. *Supra* note 23.

27. *McClain, supra* note 23 at 823–824.

28. *Id.* at 823.

29. *Id.* at 823.

30. A leading treatise on liability insurance, IRVIN E. SCHERMER, AUTOMOBILE LIABILITY INSURANCE (1991 supp.), states that "[w]here liability coverage is compulsory, a majority of the courts have invalidated the household exclusion clause on the ground that it denies a class of claimants the protection the legislation was designed to afford." *Id.* at § 19.07[2] (1991 supp.). *This is an oversimplification.* Our research reveals a much closer split than indicated by *Schermer.*

The Estate relies upon a law review article, Christina Schuler, *Family Exclusion Clauses Void in Automobile Insurance Policies,* 35 DRAKE L. REV. 817 (1987). This article is unfortunately not quite up to date and is erroneous in a number of important respects. It incorrectly states,

Applying Oklahoma law to similar facts, the U.S. Court of Appeals for the Tenth Circuit in *Farmers Ins. Co. v. McClain*[26] upheld a household exclusion clause identical to the one challenged here by the Estate.[27] A permissive user had borrowed an automobile and wrecked it, injuring his wife. The federal court held the household exclusion applied to the case and denied coverage to the plaintiff.[28] *McClain* is not altogether illuminating because the court did not discuss the public policy implications of the exclusionary clause.[29]

The *states are divided* on whether public policy articulated by compulsory insurance laws requires that the exclusion here under review be declared void as contrary to statutorily laid down public policy.[30] *No single approach to public policy attacks upon household exclusion clauses can be regarded as the majority trend.* The *following jurisdictions,* all with compulsory liability coverage, *have invalidated* the household exclusion clause on public policy reasons: Delaware,[31] Idaho,[32] Michigan,[33] Montana,[34] New Jersey,[35] New Mexico,[36] North Dakota,[37]

for example, that Oklahoma declared the household exclusion void in *Unah, supra* note 5 at 821.

31. *State Farm Mut. Auto. Ins. Co. v. Wagamon,* 541 A.2d 557, 560–562 (Del.Supr.1988) (declaring household exclusion void and imposing liability to the policy limits).

32. *Farmers Ins. Group v. Reed,* 109 Idaho 849, 854, 712 P.2d 550, 555 (1985) (declaring household exclusion void).

33. *State Farm Ins. Co. v. Sivey,* 404 Mich. 51, 272 N.W.2d 555, 558 (1978) (declaring passenger exemption void).

34. *Transamerica Ins. Co. v. Royle,* 202 Mont. 173, 656 P.2d 820, 824 (1983) (declaring household exclusion void).

35. *Kish v. Motor Club of America Ins. Co.,* 108 N.J.Super. 405, 261 A.2d 662, 666 (declaring household exclusion void and *imposing liability to policy limits, not the statutory minimum* ), cert. denied, 55 N.J. 595, 264 A.2d 68 (1970).

36. *Estep v. State Farm Mut. Auto. Ins. Co.,* 103 N.M. 105, 111, 703 P.2d 882, 888 (1985) (declaring household exclusion void).

37. *Hughes v. State Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870, 885 (N.D.1976) (declaring household exclusion void and imposing liability to the policy limits).

South Carolina [38] and Texas.[39] *In the following jurisdictions household exclusion clauses have been held unenforceable insofar as they deny minimum statutory coverage:* Arizona,[40] Kansas,[41] Kentucky,[42] Maryland,[43] Missouri,[44] Nevada,[45] New York,[46] South Dakota,[47] Utah,[48] Washington,[49] and Wyoming.[50] *Household exclusion clauses withstood public policy challenges in the following jurisdictions:* Alabama,[51] California,[52] Colorado,[53]

**38.** *Jordan v. Aetna Cas. & Sur. Co.*, 264 S.C. 294, 214 S.E.2d 818, 820 (1975) (declaring household exclusion void).

**39.** *National County Mut. Fire Ins. Co. v. Johnson*, 829 S.W.2d 322, 326 (Tex.Ct.App.1992) (declaring household exclusion void).

**40.** *Arceneaux v. State Farm Mut. Auto Ins. Co.*, 113 Ariz. 216, 217, 550 P.2d 87, 88 (1976) (declaring household exclusion void to extent of statutory minimum coverage).

**41.** *DeWitt v. Young*, 229 Kan. 474, 625 P.2d 478, 483 (1981) (declaring household exclusion clause void to the extent of statutory minimum coverage).

**42.** *Beacon Ins. Co. of America v. State Farm*, 795 S.W.2d 62 (Ky.1990); *Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865, 866 (Ky.1981) (declaring household exclusion clause invalid to the extent it dilutes the statutory minimum coverage).

**43.** *State Farm Mut. v. Nationwide Mut.*, 307 Md. 631, 516 A.2d 586, 592 (Md.App.1986); *Jennings v. Government Empl. Ins. Co.*, 302 Md. 352, 488 A.2d 166, 170 (Ct.App.1985) (declaring household exclusion void to the extent of statutory minimum coverage).

**44.** *Halpin v. American Family Mutual Ins. Co.*, 823 S.W.2d 479, 482 (Mo.1992) (declaring household exclusion void to the extent of statutory minimum coverage).

**45.** *Farmers Ins. Exch. v. Young*, 108 Nev. 328, 331, 832 P.2d 376, 379 (1992); and *Estate of Neal v. Farmers Ins. Exch.*, 93 Nev. 348, 350, 566 P.2d 81, 83 (1977) (both declaring household exclusion void to the extent of minimum coverage).

**46.** *Allstate Ins. Co. v. Anzalone*, 119 Misc.2d 222, 462 N.Y.S.2d 738, 740 (N.Y.App.Div.1983) (*upholding household exclusion with respect to spouse, and voiding household exclusion with respect to other members of the household, e.g., children* ).

**47.** *Cimarron Ins. Co. v. Croyle*, 479 N.W.2d 881, 884 (S.D.1992) (declaring household exclusion void to the extent of statutory minimum coverage).

**48.** *State Farm Mut. Auto. Ins. v. Mastbaum*, 748 P.2d 1042, 1044 (Utah 1987); *Farmers Ins. Exchange v. Call*, 712 P.2d 231, 236 (Utah 1985) (declaring household exclusion void to the extent of statutory minimum coverage).

**49.** *Mutual of Enumclaw v. Wiscomb*, 97 Wash.2d 203, 643 P.2d 441, 446 (1982) (declaring household exclusion void where it purports to deny coverage to children). The court reserved in *Wiscomb* the question of the validity of motor vehicle insurance policy exclusion consciously bargained for by the insurer and its insured. In *Progressive Cas Ins. Co. v. Jester*, 102 Wash.2d 78, 683 P.2d 180, 182 (1984), the court rejects the dicta of *Wiscomb, supra,* that a bargained-for exclusion violates public policy where it purports to deny coverage to any person not a party to the insurance contract.

**50.** *Allstate Ins. Co. v. Wyoming Ins. Dept.*, 672 P.2d 810, 814 (Wyo.1983) (declaring household exclusion void to the extent of statutory minimum coverage).

**51.** *Hutcheson v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 435 So.2d 734, 737 (Ala.1983) (finding household exclusion clause a valid exercise of insurer's contractual rights and not contrary to public policy).

**52.** *Farmers Ins. Exch. v. Cocking*, 29 Cal.3d 383, 173 Cal.Rptr. 846, 849–50, 628 P.2d 1, 4 (1981) (upholding household exclusion clause).

**53.** *Allstate Ins. Co. v. Feghali*, 814 P.2d 863, 866–867 (Colo.1991) (upholding household exclusion against an equal protection challenge); *Schlessinger v. Schlessinger*, 796 P.2d 1385, 1389 (Colo. 1990) (holding that the legislature, in *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585, 592 (Colo.1984), abrogated all case law which had declared household exclusions void).

Florida,[54] Georgia,[55] Illinois,[56] Indiana,[57] Iowa,[58] Massachusetts,[59] Pennsylvania,[60] and Rhode Island.[61]

## III

### TODAY'S JUDGMENT PERPETUATES AMBIGUITY

#### A.

*A Conclusion In Need Of A Rationale For Want Of Five Votes To Support Any One Of The Competing Solutions*

Although I agree with the court's result, I am concerned by our inability to craft a discernible standard for today's dispositional words "that upon the facts of this case the household exclusion is invalid insofar as it attempts to defeat the legislature's mandate of a minimum amount of liability insurance coverage available for *persons in the position of the deceased passenger here.*" (Emphasis added.)

The italicized passage unveils an underlying ambiguity to which I must direct myself. Because nothing in the disposition indicates what is meant by *"persons in the position of the deceased passenger here,"* the quoted lan-guage lends itself to countless interpreta-tions. Is the "position" one of a household member, a relative, a passenger, a minor, all persons, non-car owners, those without their own insurance, or some combination of the above?

The court "granted certiorari to review this question of first impression," but regret-tably offers no discernible standard for fu-ture guidance. Because today's judgment—accompanied by separate writings with di-verse views—leaves lower courts free to place their own imprint on the meaning of *"in the position of the deceased passenger here,"* we will doubtless have to revisit the question in the not-too-distant future to eluci-date on the cryptically worded judgment.

#### B.

*Looney Unresolved*

The teachings of *Looney,*[62] which upheld both the household and named insured exclu-sions as not repugnant to the Financial Re-sponsibility Act, cannot be ignored. There, we concluded that the Act was not relevant to a determination of the validity of policy exclusions.[63]

54. *Amica Mut. Ins. v. Wells,* 507 So.2d 750, 752 (Fla.Dist.Ct.App.1987) (upholding household ex-clusion clause).

55. *Stepho v. Allstate Ins. Co.,* 259 Ga. 475, 383 S.E.2d 887, 889 (1989); *Southern Guar. Ins. v. Preferred Risk,* 257 Ga. 355, 359 S.E.2d 665, 667 (1987) (holding household exclusion not per se void, but its efficacy subject to case-by-case as-sessment to determine if it unfairly penalizes innocent victims; the opinion concludes, after scrutiny, that the clause challenged in that case is valid).

56. *Severs v. Country Mut. Ins. Co.,* 89 Ill.2d 515, 61 Ill.Dec. 137, 139, 434 N.E.2d 290, 292 (1982) (finding household exclusion valid given the ab-sence of legislative intent to the contrary).

57. *Transamerica Ins. Co. v. Henry By Next Friend Henry,* 563 N.E.2d 1265, 1268–1269 (Ind.1990) (upholding household exclusion clauses under compulsory financial responsibility law); *Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096, 1098 (Ind. 1985) (upholding household exclusion clause un-der pre-compulsory financial responsibility statu-tory scheme); *United Farm Bureau Mut. Ins. Co. v. Hanley,* 172 Ind.App. 329, 360 N.E.2d 247, 250 (1977) (upholding household exclusion clause).

58. *Walker v. American Family Mutual Insurance Co.,* 340 N.W.2d 599, 603 (Iowa 1983) (uphold-ing household exclusion clause on freedom of contract grounds); *Rodman v. State Farm Mut. Ins. Co.,* 208 N.W.2d 903, 908 (Iowa 1973) (up-holding household exclusion clause).

59. *Hahn v. Berkshire Mut. Ins. Co.,* 28 Mass.App. 181, 547 N.E.2d 1144, 1145 (1989) (finding valid the exclusion of insured in homeowner's policy from coverage for bodily injury).

60. *Paiano v. Home Ins. Co.,* 253 Pa.Super. 519, 385 A.2d 460, 462 (1978) (finding household exclusion not contrary to public policy).

61. *Faraj v. Allstate Ins. Co.,* 486 A.2d 582, 588 (R.I.1984) (finding household exclusion valid where insurance statutes do not purport to define the scope of required coverage).

62. *Supra* note 18.

63. In *Looney, supra* note 18 at 1141, we observed that the purpose of the Act's compulsory liability insurance provisions is to compel motor vehicle owners to maintain liability insurance—not to determine proper policy exclusions.

Nina Looney was denied coverage because two valid policy exclusions applied to her: a household exclusion clause *and* an exclusion of the named insured.[64] *Looney is not distinguishable from the situation at bar.* The court acknowledged there that the policy provisions *applied in the disjunctive,* not in the conjunctive. The claimant would have been denied coverage *if only one of these exclusionary clauses* was applicable. Because both clauses applied and we concluded that both were valid, we did not determine which was effective to deny coverage.[65]

## C.

### *Fragile Underpinnings Of Broad Invalidation*

Based upon an *expansive view* of *previously unarticulated* public policy, *some justices* would press for a broad invalidation of household exclusion clauses. The Act—presumably the source for their perceived public policy mandate—*expressly allows exclusions by agreement.*[66] The legislature contemplates that some policy provisions are compatible with the Financial Responsibility Act, despite their effect of excluding certain individuals from coverage.[67] The Act provides that others may be excluded from coverage by policy provisions, thus enabling individual insureds to keep their insurance rates at an acceptable level. *Persons are not required to insure themselves or others they choose to exclude by name in the policy.*[68] *All these choices are allowed by the express language of the Act.*[69] The household exclusion clause

does what the insured could have done with the blessing of the legislature—exclude specific individuals (e.g., household members) from coverage.[70]

The blanket invalidation approach pressed by some justices *fails to distinguish between permissible and impermissible exclusions.* The legislature has authorized some exclusions as *valid.*[71] The court has stated previously that *some* exclusions are *invalid.*[72] Freedom of contract can be restricted *only in the name of articulated public policy.*[73] It is important to strike a balance between the competing interests of freedom of contract and the legislatively declared imperative of protection for the public. I agree that public policy controls over restrictive contractual provisions that give less protection than the law commands. But since the Act *expressly contemplates—if not authorizes—liability exclusions by contract,* it is improper to ignore the *specific* in favor of the more *general* provisions in the Act.

*State Farm Mut. Ins. Co. v. Schwartz,* a recent federal case, affords no support for the broad invalidation argument.[74] There, the United States Court of Appeals for the Tenth Circuit noted that *Oklahoma law was unsettled on the validity of household exclusion clauses when gauged by our compulsory insurance law.* Nevertheless, the federal court concluded such clauses violated public policy. By rejecting the *clear teachings* of *Looney* as "non-binding dictum"[75] while embracing the "general sentiment" from *Unah*

---

**64.** The *Looney* policy provided: "This policy does not apply to ... the liability of any insured for bodily injury to (a) any member of the same household of such insured of the same household of such insured except a servant, or (b) the named insured." *Looney, supra* note 18 at 1139.

**65.** *Looney, supra* note 18 at 1141.

**66.** The pertinent terms of 47 O.S.1991 § 7-324(b) and (c) are:
"(b) Owner's policy. Such owner's policy of liability insurance: * * *
(c) *May by agreement* in a separate written endorsement between any named insured and the insurer *exclude as insured any person or persons* designated by name from coverage under the policy." (emphasis added.)

**67.** Id.

**68.** *Id.*

**69.** *Id.*

**70.** *Id.*

**71.** *See supra* note 15 for the pertinent terms of 47 O.S.1991 § 7-324(c)(b).

**72.** *See Young, supra* note 12; *Equity, supra* note 17.

**73.** *Burk v. K-Mart Corp.,* Okl., 770 P.2d 24, 28 (1989).

**74.** 933 F.2d 848 (10th Cir.1991).

**75.** *Id.* at 851.

*v. Martin*, [76] the federal court stopped short of giving full effect to Oklahoma's extant compulsory insurance jurisprudence. Federal courts must follow settled state law rather than speculate on its uncertain course.[77] Because *Schwartz* lacks support in our precedent, little guidance can be gleaned from that decision.

## D.

### The Proper Treatment Of Household Exclusions

Household exclusion clauses *should be held invalid only insofar as* they would withhold coverage from those who are neither required nor expected to purchase automobile protection—individuals who do not own a car.[78] Recognizing how unlikely it would be for non-owners to maintain UM coverage for personal protection, I would deem it consistent with statutorily articulated public policy to allow these non-owners to recover under another's liability policy, notwithstanding an otherwise applicable household exclusion clause. These clauses should remain effective as to those related household members who own a car.

The purpose of liability coverage is to protect *other motorists* from the insured's negligence,[79] whereas UM coverage protects *the insured and any passengers* from actionable harm inflicted *by other* uninsured and underinsured motorists.[80] Although the household exclusion for liability coverage deprives family members of liability protection, it does not prevent individuals from insuring themselves and their families by securing additional UM coverage. Indeed, the statutory regime for UM coverage contemplates insureds' purchase of UM protection at higher limits. Nay, it requires insurance companies, if requested, to offer increased coverage.[81] By affording insureds the freedom to choose the level of protection, we relieve them from having to secure unwanted coverage.

Those who desire to invalidate broadly all household exclusion clauses would impose upon the insurer a risk for which the insured did not contract.[82] At first blush, one might think a broad invalidation of all exclusionary clauses would be a victory for consumers. No such benefit can unfortunately be conferred upon the insured public without the tacit concurrent imposition of corresponding costs. Premiums are based upon potential exposure and actuarial soundness. The expanded coverage that would be thrust upon insurers would doubtless be passed on to all affected consumers in the form of higher premiums.[83]

## IV

## SUMMARY

Today's *per curiam* disposition is regrettably devoid of *precedential value* or guidance for our courts. Were I writing for the court's majority, I would hold that *qualified household members excluded by the policy— i.e., those who do not own a car—shall be deemed insured to the limits of the insured's liability coverage, absent some explicit provisions in the policy which afford them at least the mandated minimum protection.*[84]

---

**76.** *Id.* at 852. *Unah, supra* note 5, abrogates parental immunity's grossly overextended sweep and sanctions filial recovery to the extent of the parent's automobile liability insurance.

**77.** *Salve Regina College v. Russell,* 499 U.S. 225, 231–234, 111 S.Ct. 1217, 1221–1222, 113 L.Ed.2d 190 (1991); *McLin v. Trimble,* Okl., 795 P.2d 1035, 1047 (1990) (Opala, V.C.J., dissenting); *Lepak v. McClain,* Okl., 844 P.2d 852, 860 n. 8 (1992) (Opala, C.J., concurring).

**78.** See 47 O.S.1991 § 7–601(B), *supra* note 15.

**79.** *See Equity, supra* note 17 at 951.

**80.** *See Moser v. Liberty Mut. Ins. Co.,* Okl., 731 P.2d 406, 408 (1987).

**81.** The UM provisions in 36 O.S.1991 § 3636(B) require insurance companies to offer additional UM coverage up to the limits of the insured's liability coverage.

**82.** *State Farm Mut. Auto. Ins. Co. v. Wendt,* Okl., 708 P.2d 581, 587 (1985) (Opala, J., concurring in part and dissenting in part).

**83.** *Wendt, supra* note 82 at 591.

**84.** The legal effect of today's judgment and of my view is that for UM purposes this underage plaintiff is more aptly to be described as an *underinsured* rather than *uninsured* person.

In order to afford the insurers *ample notice* and *opportunity to* alter their offers of UM coverage for those who would fall into the *protected household member class,* I *would apply the full impact* of today's new rule against exclusion from coverage *only* to those claims which *shall arise* after nine months from the date of the mandate in this case. *As for this case and for all litigable claims that have arisen before the date of this mandate, as well as for those that shall arise during a nine-month period immediately after the mandate's issuance, I would hold that improperly excluded household members (those who do not own a car) will be deemed covered solely to the extent of the minimum statutory mandate—$10,000 for each person and $20,000 for each accident.*[85]

HODGES, Chief Justice, dissenting.

The majority holds that the familial-household exclusion clause's invalidity is limited to the statutory minimum coverage by *Equity Mut. Ins. Co. v. Spring Valley Wholesale Nursery, Inc.,* 747 P.2d 947 (Okla.1987). I disagree with this holding.

Oklahoma's compulsory liability insurance law requires that both an owner's and an operator's liability insurance policy insure *"against loss from the liability imposed by law."* See Okla.Stat. tit. 47 §§ 7–600(1)(b) and 7–600(2) (1991). In *Unah v. Martin,* 676 P.2d 1366 (Okla.1984), this Court abrogated parent-child immunity to the extent of automobile liability insurance coverage, not to the extent of statutory minimum coverage. Michael George, the father, was liable for the entire amount of the judgment of $130,-000.00—not just the statutory minimum. The statute, this court's holding in *Unah,* and the judgment all point to the conclusion that the familial exclusion clause should be completely invalidated.

Based on Oklahoma's compulsory liability insurance law and this Court's opinion in *Unah,* Michael George had a reasonable expectation that his insurance policy provided protection "against loss from the liability imposed by law" to the extent of its limits, not to the minimum required by statute.

As the Court of appeals noted:

The minor child was not a party to the contract, did not qualify as a *named insured,* had no control over the insurance contract or the operation of the insured vehicle as would a *spouse,* had nothing to say about being in the car at the time in question, and finally, the five-year-old was incapable of fraud or collusion. We see no reason why such a child should not be treated like any other injured party and his estate [be] permitted to recover the full amount of the judgment from the insurance carrier, at least to the extent of the policy limits.

For these reasons, I would hold that a familial-household exclusion clause's invalidity is not limited to the statutory minimum liability coverage. To hold otherwise would "permit the significant number of losses which do exceed minimum limits to be left uninsured to the extent of the excess" above the statutory minimum coverage, *Keystone Ins. Co. v. Atlantic Chrysler Plymouth, Inc.,* 167 N.J.Super. 353, 400 A.2d 872, 876 (Ct. Law Div.1979), and expose Michael George to liability of $85,000 which is not covered by insurance.

ALMA WILSON, Justice, dissenting:

This cause was initiated to recover monetary damages for the fatal injury to a minor child caused by an automobile accident. The personal representative of the deceased minor child seeks recovery under the liability coverage in three motor vehicle liability insurance policies issued by the appellee, State Farm Insurance Company (State Farm): one policy was issued to the owner of the automo-

---

**85.** The terms of 47 O.S.1991 § 7–324(b)(2) provide in pertinent part that automobile liability insurance policies:

"Shall insure ... against loss from the liability imposed by law for damages ... *subject to limits* ... as follows: Ten Thousand Dollars ($10,000.00) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, Twenty Thousand Dollars ($20,000.00) because of bodily injury to or death of two or more persons in any one accident, and Ten Thousand Dollars ($10,000.00) because of injury to or destruction of property of others in any one accident." (Emphasis added.)

bile and two policies were issued to the permissive operator, the father of the child. All three policies are identical and contain clauses excluding personal injury to household members from the liability coverage.

The legal issue is whether the household exclusion clause in each of the three policies is valid. The parties have briefed the issue as if it were a certified question of law, concentrating on our decisional law. That is, the parties have not presented arguments of the legal issue under each of the policies separately. Accordingly, the trial Court's summary judgment in favor of State Farm did not include findings as to the identity of the household defined in each policy for purposes of exclusion, nor the extent of the coverage issued in accordance with Oklahoma's compulsory insurance law. As it had argued before the trial court, in this appeal State Farm contends that the household exclusion clause is valid; but State Farm further contends, which it did not argue in the trial court, that if the clause is invalid, the invalidity should be limited to the minimum compulsory insurance required by statute. This Court upholds the household exclusion as to any amount of the liability coverage which exceeds the minimum coverage mandated by our compulsory insurance law. For the reasons set out below, I must respectfully dissent to today's ruling.

## THE FACTS

The record reflects that Francis D. Morgan owned a 1979 Oldsmobile and resided at 5139 S. Utica in Tulsa, Oklahoma. J. Michael George and his wife and children resided at 4619 S. Vandalia in Tulsa, Oklahoma. Morgan loaned the Oldsmobile to George for a vacation trip to Wisconsin. On August 6, 1983, George and his family were returning from their trip to Wisconsin. At approximately 8:45 a.m., George was driving the Oldsmobile in the westbound outside lane on the Will Rogers Turnpike about 2.2 miles east of the Afton interchange in Ottawa County, Oklahoma, when he dozed or fell

asleep and the Oldsmobile left the roadway, struck a guardrail and then impacted with an overpass support. George's five year old son, Jeffrey George, was fatally injured in the accident. A judgment was entered against George for $130,000.00 damages for the fatal injury to Jeffrey George.

State Farm had issued an automobile insurance policy to Morgan which listed the Oldsmobile as the insured vehicle. Morgan's liability coverage has a $100,000.00 limit for personal injury to an individual and uninsured motorist coverage has a $10,000.00 limit. State Farm had also issued two automobile insurance policies to George. Each of George's policies provides liability coverage with a $25,000.00 limit for personal injury to an individual and uninsured motorist coverage with a $25,000.00 limit in one policy and $10,000.00 limit in the other policy. State Farm has paid $45,000.00, the maximum uninsured motorist coverage available, leaving $85,000.00 of the judgment unpaid, which the appellant seeks to collect under the liability provisions of the involved policies through garnishment.

## THE POLICY PROVISIONS

In deciding the liability coverage and the validity of the household exclusion clauses herein, this Court should begin with the insurance policy provisions upon which the defense relies. Even though the policies are identical, a single reading is insufficient. Morgan's policy must be read to determine the extent of the liability coverage provided for the wrongful injury caused by a permissive operator of the listed vehicle, while George's policies must be read to determine the extent of the liability coverage provided for the wrongful injury caused by the use of a non-owned automobile. The readings of Morgan's policy and George's policies must be governed by established legal rules. The language used in the insurance policies must be assigned plain and ordinary meaning;[1] the various provisions must be read together;[2] and any ambiguity must be strictly

1. Flitton v. Equity Fire and Casualty Co., 824 P.2d 1132 (Okla.1992).

2. Words, phrases and clauses of an insurance policy should be read within the context of the whole policy, Dodson v. St. Paul Insurance Co., 812 P.2d 372 (Okla.1991), so that the plain, ordi-

construed against the insurer.[3]

Each of the three State Farm policies contain the following provisions relating to liability coverage, household exclusions and definitions:

### STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy:

(Note: The words in **bold face italic** type are defined under definitions within each Section.)

### SECTION I—LIABILITY AND MEDICAL PAYMENTS INSURING AGREEMENTS

COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

To pay on behalf of the insured all sums which the **insured** shall become legally obligated to pay as **damages** because of (A) **bodily injury** sustained by other **persons,** and

(B) **property damages,**

caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the **owned motor vehicle;** and to defend, with attorneys selected by and compensated by the company, any suit against the **insured** alleging such **bodily injury** or **property damage** and seeking **damages** which are payable hereunder even if any of the allegations of the suit are groundless, false or fraudulent;

but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient....

**USE OF NON–OWNED AUTOMOBILE**

... (1) Coverages A and B applies to the use of a **non-owned automobile** by:

(a) the first **person** named in the declarations or,

(b) if **residents** of the same household, his spouse or the relatives of either, and

(c) any other **person** or organization not owning or hiring such **automobile,** but only with respect to his or its liability for the use of such **automobile** by an insured as defined in subsections (a) and (b) above; ...

PROVIDED SUCH USE, OPERATION OR OCCUPANCY IS WITH THE PERMISSION OF THE OWNER OR **PERSON** IN LAWFUL POSSESSION OF SUCH **AUTOMOBILE** AND IS WITHIN THE SCOPE OF SUCH PERMISSION. The definition of **insured** does not apply to Use of Non–Owned Automobiles.

### THIS INSURANCE DOES NOT APPLY UNDER:

... (h) COVERAGE A, TO **BODILY INJURY** TO ANY INSURED OR ANY MEMBER OF THE FAMILY OF AN INSURED RESIDING IN THE SAME HOUSEHOLD AS THE INSURED; ....

**DEFINITIONS—SECTION 1**

... **Insured**—the unqualified word "insured" includes

(1) the named insured, and

(2) if the named insured is a **person** or **persons,** also includes his or their spouse(s), if a **resident** of the same household, and

(3) if **residents** of the same household, the relatives of the first **person** named in the declarations, or of his spouse, and

---

nary, popular and generally accepted sense of the coverage is accomplished. *Wiley v. Travelers Insurance Co.,* 534 P.2d 1293 (Okla.1974); *Wilson v. Mid–Continent Life Insurance Co. of Oklahoma City,* 159 Okla. 191, 14 P.2d 945, 84 A.L.R. 386 (1932).

**3.** Since statehood, ambiguous provisions in insurance policies, like other adhesion contracts, have been construed strictly against the insurer. *Liverpool & London & Globe Insurance Co. v.*

*Kearney,* 180 U.S. 132, 21 S.Ct. 326, 45 L.Ed. 460 (1901); *General Accident Fire & Life Assurance Corp. v. Hymes,* 77 Okla. 20, 185 P. 1085, 8 A.L.R. 318 (1919); *Continental Casualty Co. v. Beaty,* 455 P.2d 684 (Okla.1969); *Lusk v. State Farm Mutual Automobile Insurance Co.,* 569 P.2d 985 (Okla.1977); *Wilson v. Travelers Insurance Co,* 605 P.2d 1327 (Okla.1980); *Dodson v. St. Paul Insurance Co.,* 812 P.2d 372 (Okla.1991).

(4) any other **person** while using the **owned motor vehicle**, PROVIDED THE OPERATION AND THE ACTUAL USE OF SUCH VEHICLE ARE WITH THE PERMISSION OF THE NAMED INSURED OR SUCH SPOUSE AND ARE WITHIN THE SCOPE OF SUCH PERMISSION, and

(5) under coverages A and B any other **person** or organization, but only with respect to his or its liability for the use of such **owned motor vehicle** by an **insured** as defined in the four subsections above.

... **Resident or Reside**—when used with reference to the named insured's household, means bodily presence in such household and an intention to continue to dwell therein. However, the named insured's unmarried and unemancipated children, while away from his household attending school, are deemed to be residents of his household.

### 6886 STATUTORY ENDORSEMENT— OKLAHOMA

... In consideration of the premium paid, it is agreed that, when the Declarations Page indicates that Coverages A and B are applicable to the policy, the following statement applies:

"Liability insurance is provided in this policy in accordance with the coverage required by the Compulsory Insurance Law of Oklahoma."

## I.

**THE FATAL INJURY TO JEFFREY GEORGE, THE PASSENGER/MINOR CHILD OF THE PERMISSIVE OPERATOR OF MORGAN'S AUTOMOBILE WHO DID NOT RESIDE IN THE MORGAN'S HOUSEHOLD, IS NOT WITHIN THE HOUSEHOLD EXCLUSION IN MORGAN'S POLICY; AND, STATE FARM SHOULD BE LIABLE TO THE ESTATE OF JEFFREY GEORGE, DECEASED, FOR $100,000.00 UNDER MORGAN'S LIABILITY COVERAGE.**

The comprehensive language insuring the operators of Morgan's Oldsmobile clearly include the fatal injury to Jeffrey George up to the policy limit. The liability coverage to be paid under Morgan's policy is set forth in all encompassing terms—State Farm agrees to pay damages for bodily injury to *other persons* caused by accident arising out of the wrongful use of the *owned motor vehicle*, Morgan's Oldsmobile, by an insured. The definition of insured clearly includes a permissive operator, such as George, within the liability insuring agreement. State Farm's endorsement providing that the liability coverage for which the premium has been paid is provided in accordance with Oklahoma's compulsory insurance law is equally all encompassing—State Farm agrees that §§ 7-600, et seq., of Title 47 of the Oklahoma Statutes control Coverage A for which the premium for a $100,000.00 limit per person coverage has been paid.

On the other hand, whether the fatal injury to Jeffrey George is excluded from the comprehensive liability coverage is not clear from the obscure language in the household exclusion clause. In view of the various articles used in the clause to modify the noun "insured," the article *the* modifying "insured" in the phrase "residing in the same household as *the* insured" could be read to mean "*the named* insured." The terms "insured" and "residing" are printed in bold italic type in the clause and, according to the policy, are used within the confines of the definitions in the liability insurance section. The definitions of "insured" and "reside" both refer to the household of the named insured. In fact, the definition of "reside" expressly limits its application to the household of the named insured.

It is State Farm's printed form that defines "reside" in terms of the household of the named insured and that requires the meaning of bold typed word "residing" in the household exclusion clause to be controlled by its definition of "reside." A strict reading of the household exclusion together with the definitions in Morgan's policy is that persons who are related to Morgan and reside in Morgan's household are excluded from liability coverage. Under the facts and circum-

stances in this case,[4] personal injury to Jeffrey George, the passenger/minor child of the permissive operator, is clearly included within Morgan's liability coverage because of George's wrongful use of Morgan's Oldsmobile and it is not excluded by the household exclusion. Accordingly, I cannot join in today's per curiam holding which implicitly extends the household exclusion clause in Morgan's policy to the household of the permissive operator, George, contrary to the terms of the policy.

## II.

**BY STATE FARM'S DECLARATION, THE LIABILITY COVERAGE FOR $25,000.00 PER PERSON IN EACH OF GEORGE'S TWO POLICIES IS WRITTEN IN ACCORDANCE WITH THE COMPULSORY INSURANCE LAW; THE HOUSEHOLD EXCLUSION CLAUSE IS CONTRARY TO THE COMPULSORY INSURANCE LAW; HENCE, THE HOUSEHOLD EXCLUSION CLAUSE IS INVALID AS TO THE POLICY LIMITS OF LIABILITY COVERAGE; AND, STATE FARM IS LIABLE TO THE ESTATE OF JEFFREY GEORGE, DECEASED, FOR AN AMOUNT UP TO $50,000.00.**

In George's policies, the same comprehensive language insuring the operators of Morgan's Oldsmobile insures George's permissive use of a non-owned automobile and the same obscure language excludes household members from the liability coverage. Because the policies expressly provide that the definition of "insured" does not apply to the use of a non-owned automobile, it cannot be used to interpret the ambiguity. But as already said, the definition of "reside" refers to the household of the named insured, George's household,[5] so that under the terms of George's policies, personal injury to Jeffrey

George, the passenger/minor child of George, would be within the household exclusion.

Without expressing its legal rationale, today's per curiam opinion holds that the household exclusion clause is contrary to §§ 7–600, et seq. of Title 47 and invalid as to the first $10,000.00 of liability coverage, the minimum coverage required by §§ 7–600, et seq. However, same as the endorsement attached to Morgan's policy, State Farm's endorsements attached to each of George's policies expressly states that the liability coverage for which the premium has been paid is provided in accordance with Oklahoma's compulsory insurance law. That is, under the plain, ordinary and clear terms of the policies, State Farm agrees that Coverage A for which the premium has been paid for a $25,000.00 limit per person coverage in each of the two policies is governed by the compulsory insurance law.

Notwithstanding State Farm's endorsement otherwise, the Court's holding fictionalizes two liability policies for each of the policies involved, and every motor vehicle liability insurance contract issued in Oklahoma in an amount of coverage greater than $10,000.00: 1) liability coverage for $10,000.00, which is subject to the compulsory insurance law; and, 2) excess or additional liability coverage for any amount of the policy limits which exceed $10,000.00, which is not subject to the compulsory insurance law. This fiction is not supported by the compulsory insurance statutes.

Our compulsory insurance statutes were originally enacted in 1976.[6] In 1982, § 7–600.1 was added to the compulsory insurance laws.[7] It authorizes excess or additional liability coverage to be included in an insurance policy which provides compulsory insurance, as follows:

---

4. The record reflects that Jeffrey George did not reside in the household with Francis Morgan and it does not reflect that Jeffrey George was related to Francis Morgan by affinity or consanguinity.

5. The facts that Jeffrey George was related to J. Michael George and they resided in the same household are not disputed.

6. 1976 Okla. Session Laws, ch. 176, codified at 47 O.S.Supp.1976, §§ 7–601, et seq.

7. 1982 Okla.Sess.Laws, ch. 355, § 2, codified at 47 O.S.Supp.1982, § 7–600.1.

Section 2. **Statement or endorsement to be included in policies—Excess or additional coverage—Binders.**

A. The following statement or endorsement shall be included in owner's policies and operator's policies except certified policies issued pursuant to Section 7–324 of Title 47 of the Oklahoma Statutes: "Liability insurance is provided in this policy in accordance with coverage required by the Compulsory Insurance Law of Oklahoma."

B. Excess or additional coverage. A policy may also grant any lawful coverage in excess or in addition to the coverage specified for policies defined by Section 1 of this act [§ 7–600, Definitions] and such excess or additional coverage shall not be subject to the provisions of the Compulsory Insurance Law.

C. Binders. Any binder issued pending the issuance of a policy shall be deemed to fulfill the requirements for such a policy.

Subsection B, without ambiguity, provides that an insured and insurer may agree to the inclusion of other liability coverage in the same contract that provides the compulsory liability insurance and that the other liability insurance will not be subject to compulsory insurance law. That is, excess or additional liability coverage, like medical payments and uninsured motorist coverage, may be included in an insurance policy providing compulsory insurance and the excess coverage will not be subject to the compulsory insurance statutes. Any other reading would render the phrase "may also grant" useless.[8]

The Court's holding implicitly rewrites § 7–600.1 to say—A policy may *provide* coverage *with limits* in excess or in addition to the *minimum* coverage specified for policies defined by Section 1 of this act and such excess or additional coverage shall not be subject to the provisions of the Compulsory Insurance Law. The Legislature could have

provided that the compulsory insurance laws are not applicable to that part of the liability coverage which exceeds the minimum amount required. But it did not. The statute plainly says that excess or additional coverage may be granted which shall not be subject to the compulsory insurance law. Further, as to an owner's policy and the liability coverage therein which follows the automobile, the Court's holding confuses primary and excess liability coverage.[9]

As I read § 7–600.1, it would permit an insured to buy and an insurer to sell two separate liability coverages as perceived by the per curiam opinion, but that is not the agreement contained in the policies before the Court. As set out above, State Farm endorsed the liability coverages to be in accordance with the compulsory insurance law with the monetary limits for which the premiums were paid. Accordingly, I cannot join in today's per curiam holding which invalidates the household exclusion clauses in the involved policies as to the minimum $10,000.00 coverage mandated by our compulsory insurance law only.

## III.

**EXCLUSIONS FROM LIABILITY COVERAGE PROVIDED IN ACCORDANCE WITH OKLAHOMA COMPULSORY INSURANCE LAW MUST BE EXECUTED BY THE INSURED AND THE INSURER IN A SEPARATE WRITTEN ENDORSEMENT.**

The first impression issue presented herein is whether the household exclusion clause which the insurer inserted into the printed form of the insurance policy providing liability coverage is contrary to law and invalid. Without expressing its legal rationale, today's per curiam opinion holds that the household exclusion clause is contrary to §§ 7–600, et seq. of Title 47. I agree with the Court's conclusion, but I would also con-

---

8. It is presumed that every provision in a statute has a useful purpose. *Hunt v. Washington Fire & Marine Insurance Co.*, 381 P.2d 844 (Okla.1963).

9. In *Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery*, 747 P.2d 947, 954–955 (Okla. 1987), we said: *"Primary coverage* is provided when, under the terms of the policy, the insurer

is liable without regard to any other insurance coverage available. *Excess coverage* or *secondary coverage* is provided when, under the terms of the policy, the insurer is liable for a loss only after any primary coverage—*other insurance*—has been exhausted...."

clude that the household exclusion clause is invalid as to the whole of the liability coverage.

At its inception, our financial responsibility law authorized a household exclusion from motor vehicle liability insurance.[10] However some thirty years ago, the Legislature repealed the provisions allowing guest/passenger and household/family member exclusion from liability coverage required by the financial responsibility statutes.[11] Research reveals no preserved legislative intent for the 1961 statutory changes other than the intent obvious from the face of the measure—to reject clauses in motor vehicle liability insurance policies which exclude guest/passengers and household family members of the named insured from coverage.[12] The repealed household exclusion provision has not been reenacted. However, in 1980 the Legislature amended § 7–324 of the financial responsibility law,[13] adding a provision that a liability insurance policy may exclude any person or persons designated by name from coverage. The 1980 amendment clearly requires that any exclusion of a person or persons must be agreed to by separate endorsement between any named insured and the insurer:

(b) Owner's policy. Such owner's policy of liability insurance: ...

(c) May by agreement in a separate written endorsement between any named insured and the insurer exclude as insured any person or persons designated by name from coverage under the policy....

In my view, for purposes of financial responsibility of motorists after the occurrence of an accident, the Legislature has expressed its intent that guest/passengers and household members may not be excluded from the liability coverage and that exclusions of a person or persons from liability coverage must be agreed to, in writing, by the insured and the insurer. In resolving the household exclusion clause issue herein, I would not ignore the public policy expressed by the Legislature in our financial responsibility statutes when it repealed the statutory household exclusion provisions and when it required a separate written endorsement to exclude a person or several persons from liability coverage.

Our compulsory automobile liability insurance law requires every owner of an automobile and every operator to maintain security, i.e. an insurance policy, as required by § 7–

---

**10.** In 1949, the Legislature expressly provided that insurers may exclude bodily injury to or death of guest-passengers and family members of the household of the insured from the coverage afforded by a motor vehicle liability insurance policy. 1949 Okla.Sess.Laws, ch. 9b. Section 21 of ch. 9b, codified at 47 O.S.1951, § 521, the precursor to 47 O.S.1991, § 7–324, provided in part:

(e) Such motor vehicle liability policy **need not insure** any liability under any Workmen's Compensation Law nor **any liability on account of bodily injury to or death of a guest passenger or member of the family of the insured residing in the same household, other than domestic, of the insured,** or while engaged in the operation, maintenance or repair of any such motor vehicle nor any liability for damage to property owned by, rented to, in charge of or transported by the insured. [Emphasis added.]

**11.** 1961 Okla.Sess.Laws, ch. 10b, § 20–106. Authorization for the exclusions has not been reenacted by the Legislature. 47 O.S.1991, § 7–324.

**12.** The intent of the 1961 repeal was considered in *Hibdon v. Casualty Corporation of America,*

*Inc.,* 504 P.2d 878 (Okla.App.1972), wherein the Court of Appeals concluded that a passenger exclusion clause is contrary to legislative intent. *Hibdon* was left standing in *Looney v. Farmers Insurance Group,* 616 P.2d 1138 (Okla.1980). *Looney,* distinguishing *Hibdon* on the facts, concluded that the appellant was more than a mere member of the family of the insured because her relationship with the defendant Looney (as his wife) surpassed mere household member status and placed her within the policy definition of named insured. In upholding the exclusion of Mrs. Looney as a named insured, the *Looney* opinion said § 7–324 is "the proper statute for determining exclusion validity." *Looney,* 616 P.2d at 1141. This language was expressly disapproved in *Young v. Mid–Continent Casualty Co.,* 743 P.2d 1084, 1087 (Okla.1987), but the remainder of *Looney* was left standing. *Equity,* 747 P.2d at 952–953 also left *Hibdon* standing, saying: "The Oklahoma Court of Appeals held that a passenger exclusion in a liability policy issued in compliance with Articles II and III [Footnote omitted.] of the Financial Responsibility Act contravened the intent of the act and was therefore void."

**13.** 1980 Okla.Sess.Laws, ch. 235, § 5, adding a new subsection C. to § 7–324 of Title 47.

204 of Title 47.[14] In 1982, the Legislature amended the compulsory insurance statutes,[15] adding a definitions section. The definition of owner's policy allows exclusions from coverage in accordance with existing law: [16]

> As used in Article VI, Chapter 7 of Title 47 of the Oklahoma Statutes:
>
> 1. "Owner's policy". An owner's policy of liability insurance: ...
>
> c. may provide for exclusions from coverage in accordance with existing law, and....

The liability insurance required by our compulsory insurance law is a condition precedent to driving a motor vehicle upon the public streets, roads and highways, while the liability insurance required under the financial responsibility law is not triggered until the occurrence of an accident.[17] These statutes have a common underlying public policy—financial protection for the public for damages wrongfully caused by motorists—and may be read with reference to each other.[18] Only one conclusion favorable to State Farm can be reached herein if the 1980

amendment to § 7–324 which authorized exclusions of persons from coverage by separate endorsement and the 1982 enactment of § 7–600 which authorized exclusions from coverage in accordance with existing law are read in pari materia. That conclusion is that an enforceable household exclusion from liability coverage in an owner's or operator's motor vehicle liability policy must be agreed to by the insured and the insurer by separate written endorsement.[19] Accordingly, I cannot join in today's per curiam holding which enforces the household exclusion clauses unilaterally inserted into the involved printed policies by the insurer.

## IV.

## CONCLUSION

Resolution of the first impression issue herein—whether the injury to a passenger/child of a negligent driver may be excluded from coverage in a motor vehicle liability insurance policy by a household exclusion clause—will have widespread impact. The common law parent/child tort immunity has been abrogated.[20] In *Unah* the parent/child

14. Although the compulsory insurance law is separate from our financial responsibility law, it references § 7–204. Section 7–204 provides the minimum amount of liability insurance, exclusive of interest and costs, which an owner or operator must have had at the time of an accident to suspend the security requirements following the accident.

15. 1982 Okla.Sess.Laws, ch. 355, § 1, codified at 47 O.S.Supp.1982, § 7–600.

16. Existing law, 47 O.S.1981, § 7–324, required a separate written endorsement in order to exclude a person or persons from motor vehicle liability insurance coverage.

17. *Beavin v. State ex rel. Department of Public Safety,* 662 P.2d 299 (Okla.1983).

18. Relevant provisions of statutes relating to the same subject matter should be considered together whenever possible to ascertain legislative intent. *Haney v. State,* 850 P.2d 1087 (Okla.1993); *Naylor v. Petuskey,* 834 P.2d 439 (Okla.1992).
    In *Equity Mutual Ins. Co.,* 747 P.2d at 952, we considered § 7–324, which requires liability coverage within the United States and Canada, in holding a 200–mile radius limitation clause contrary to legislative intent of § 7–600. Yet, in *Beavin,* 662 P.2d at 302, we refused to apply the exceptions to the suspension of drivers' license in

§ 7–203 as exceptions to the compulsory insurance law; and in *Young,* 743 P.2d at 1087, we refused to apply the provisions of § 7–324, permitting exclusions of persons by separate endorsement, to defeat the clear legislative intent of the compulsory insurance law that any vehicle operated on the highways of Oklahoma shall be secured against liability to innocent victims. But *Beavin* and *Young* refused to read the provisions in the financial responsibility statutes and the compulsory insurance law together because a conflict would have resulted, which is not the case here.

19. Notwithstanding the freedom of contract principle, exclusions which render the vehicle uninsured, i.e., exclusion of drivers under the age of twenty-five years, are impermissible as violative of the intent of the compulsory insurance law because "the exclusionary clause in question has the effect of limiting the insurer's liability to an innocent victim who was not a party to the contract...." *Young,* 743 P.2d at 1088.

20. *Unah v. Martin,* 676 P.2d 1366 (Okla.1984). State Farm's arguments presented in the trial court to support the household exclusion clause which it inserted into its liability insurance policy form were rejected by this Court in *Unah.* When asked the reason for the household exclusion clause, the State Farm answered:
    The household exclusion clause was inserted in State Farm's policies as a result of a decision

**900**

tort immunity was abrogated to the full extent of the parent's automobile liability insurance. *Equity* held that a geographical exclusion in a liability policy is invalid insofar as it limits the statutorily required minimum insurance, but the vehicles involved were a commercial tractor and trailer. The *Equity* limitation is contrary to our holding in *Unah;* it is contrary to State Farm's endorsement of each of the policies herein; and, it was not urged in the trial court. I remain committed to the principles expressed in *Unah* —there is no parent/child immunity to the extent of the parent's liability coverage. I would reverse the trial court's summary judgment, finding and holding that the entire amount of the liability coverage in all three policies in the record on appeal has been endorsed as issued in accordance with the Oklahoma compulsory insurance law; that the household exclusion clause in George's policies is contrary to public policy expressed in our compulsory insurance statutes; and that Jeffrey George is not within the household exclusion in Morgan's policy.

made by underwriting department. The most obvious reason for a household exclusion is to avoid fraudulent claims. The validity of the household exclusion has been recognized by

the Oklahoma Supreme Court and the federal courts in Oklahoma. [Answer to *INTERROGATORY NO. 23,* R. at 48.]